IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cr-40039-SMY |
| | ) | |
| MINGQING XIAO, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY**

The government has far exceeded its discovery obligations in this case.  Thus, Defendant's discovery motion, *see* Doc. 82, should be denied.  *First*, the government has produced all the documents it has from the National Science Foundation (NSF), including all the documents in the file for the grant number at issue.  Thus, Defendant's broad requests for additional documents from NSF should proceed under Defendant's already-pending motion for a Rule 17(c) subpoena to NSF. Defendant cannot bypass Rule 17(c) by redefining the scope of the government's obligations under Rule 16.  The NSF agency as a whole is not part of the prosecution team and thus not part of the "government" as that term is used in Rule 16.  Defendant acknowledged as much in his Rule 17(c) motion, arguing that the Court should grant that motion because the NSF documents it sought were not "otherwise procurable," *e.g.*, fell outside Rule 16.  *Second*, agents' rough notes are not producible where the government has already produced interview reports or "302s" to the defense containing all discoverable information contained in the notes.  Defendant has offered no reason to believe the produced interview reports omit discoverable information, so this part of the motion must be denied as well.  *Third*, the government believes the parties have reached a mutually agreeable resolution of the surveillance-reports issue.

1

**BACKGROUND**

The government has far exceeded its discovery obligations in this case.  The government has produced over 15,000 pages of discovery to the defense.  Even that number does not include 35 gigabytes of emails produced in June 2021 and mirrored hard drives produced around the same time.  To date, the government has received no reciprocal discovery from the Defendant whatsoever, despite the government's repeated requests.

The government has already produced the material documents within its possession that are responsive to the two sets of document requests at issue in Defendant's motion (the third set is no longer in dispute).

**NSF documents**.  The government has produced all discoverable documents from NSF contained in the criminal file.   Relevant to Defendant's motion:

- Defendant has received the 2017, 2018, 2019, and 2020 versions of the PAPPG.  Additional versions are publicly available on the NSF website.  The government has also produced a list of NSF policy documents and FAQs with URLs.

- Defendant has received, or will receive, all documents in the NSF file for Grant No. 1854638, the grant that is the subject of the indictment, except the names of the individual proposal reviewers.[1]  This includes all parts of the grant proposal, reviewers' comments and analysis; correspondence between Dr. Xiao and the NSF program officer; the grant award letter; and the first annual project report.

- Defendant has received Dr. Xiao's application history with NSF.

---

[1] In preparing this response, the government went back to NSF-OIG for any updates to the file, which it will produce to the defense.  With those additional documents, Defendant will have *all* documents in the NSF file for Grant No. 1854638.  The names of the individuals who originally reviewed the proposal have been redacted.  This confidentiality is necessary to maintain the integrity of the proposal review process.

- Defendant has received NSF documents regarding Dr. Xiao's 2014 NSF grant, No. 1419028.

- Defendant will receive a final notice letter sent by NSF-OIG to Dr. Xiao regarding a separate research misconduct investigation into allegations of plagiarism.[2]

- Defendant has received Jencks material and related information provided by NSF regarding research security and transparency.

In September 2021, Defendant filed a motion asking for a Rule 17(c) subpoena to NSF containing a list of broad discovery requests. *See* Doc. 52 (Defendant's motion to issue Rule 17(c) subpoena to NSF). A few months later, he filed the instant motion seeking similar discovery from NSF under Rule 16. Docs. 82-83.

**Interview Reports**. The government has produced all interview reports (sometimes known as "302s" because they are completed on FBI form FD-302) in this case to date. Defendant asks instead for the rough notes taken by agents during the interviews. Docs. 82-83.

## ARGUMENT

**I.    The parties agree that Defendant can seek additional documents from NSF through Rule 17(c), but Defendant cannot use Rule 16 to gain access to the entire NSF agency.**

The parties agree that the Defendant can ask for additional documents from NSF. Until recently, the parties also seemingly agreed that Rule 17(c) was the proper mechanism for doing so. *See* Doc. 52 (Defendant's motion to issue Rule 17(c) subpoena to NSF). In fact, Defendant represented in his earlier motion for Rule 17(c) subpoenas that the requested documents from NSF were "not otherwise procurable." Doc. 52 at 10-11 ("the documents sought here were not covered by the Government's requests [to NSF], so Dr. Xiao can only assume that they are not in the

---

[2] Defendant should already have the original copy of this letter, which is addressed to him. The letter was also recently provided to the government by NSF-OIG and will be produced to Defendant shortly.

prosecution team's possession"). That representation assumed NSF was not part of the "government" under Rule 16, contrary to the assertions in the current discovery motion.

Defendant's current motion seeks to evade Rule 17(c)'s strictures, *see* Doc. 83 at 6 n.6, by arguing that the prosecution team is required to collect and product additional documents from NSF under Rule 16(a)(1)(E) in response to Defendant's broad demands. This misreads Rule 16, as Defendant's earlier motion recognized. The prosecution team has produced, and will continue to produce, all NSF documents in its possession and control. This has included a significant number of documents from NSF. But redefining the prosecution team to include entire government agencies, as Defendant suggests, would have serious consequences in federal program-fraud cases like this one, and should be rejected.

Rule 16 imposes no such obligation. The government must allow a defendant to inspect and copy items "within the government's possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(A)(1)(E)(i). But "[t]he scope of the government's 'possession, custody, or control' is bounded." *United States v. Ellison*, 527 F. Supp. 3d 161, 166 (D.P.R. 2021). It "does not refer to materials held by 'the government in general.'" *Id.* (quoting *United States v. Holihan*, 236 F. Supp. 2d 255, 260–61 (W.D.N.Y. 2002)). The "government," for purposes of Rule 16, means the prosecution team. *United States v. Chalmers*, 410 F. Supp. 2d 278, 289 (S.D.N.Y. 2006) (explaining that "government" is no "broader than the 'prosecution team' standard that has been adopted in the *Brady* lines of cases").[3] The question, then, is whether NSF as a whole is part of the "prosecution team" in this case. It is not.

The "prosecution team" is defined at the individual level not the agency level. It means "the prosecutor or anyone over whom he [or she] has authority." *Moon v. Head*, 285 F.3d 1301,

---

[3] The Seventh Circuit, in fact, suggests the "government" may be narrower than the "prosecution team." *See United States v. Hamilton*, 107 F.3d 499, 509 n.5 (7th Cir. 1997).

1309-10 (11th Cir. 2002) (internal citations and quotation marked omitted).  Even within a particular U.S. Attorney's Office, or a particular investigative agency, the "prosecution team" does not encompass all individuals within that agency, or all documents within their collective control.  *See, e.g.*, *United States v. Locascio*, 6 F.3d 924, 948-950 (2d Cir. 1993) (holding that the prosecution team did not need to sift through reports prepared by agents who were not members of the prosecution team for potentially discoverable information); *United States v. Volpe,* 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) (holding that a prosecution team has no obligation to produce material in the possession of a different prosecution team not involved in the joint investigation and to which it had no access).  This makes sense.  Adopting a "'monolithic view of government'" for discovery purposes would "'condemn the prosecution of criminal cases to a state of paralysis.'"  *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (citation omitted).

For similar reasons, federal courts typically reject assertions that the prosecution team must go and collect documents from other government agencies.  *See United States v. Morris*, 80 F.3d 1151, 1169–70 (7th Cir. 1996); *United States v. Pelullo*, 399 F.3d 197, 216 (3d Cir. 2005).  In *Morris*, defendant sought allegedly exculpatory information held by the Internal Revenue Service (IRS), Securities Exchange Commission (SEC), and Office of Thrift Supervision (OTS.).  *Id*.  The Seventh Circuit agreed with the district court that the prosecution team had no obligation to go and collect documents from these other agencies.  "[N]one of those agencies were part of the team that investigated this case or participated in its prosecution," the court explained, so prosecutors "had no affirmative duty to discover those documents and to disclose them to defendants."  *Id*.

Similarly, in *Pelullo*, defendant sought documents held by a branch of the Department of Labor (DOL) that had engaged in a civil investigation of defendant's conduct.  *Pelullo*, 399 F.3d 216.  Other agents within the DOL had been "integral members of the prosecution team," so

5

defendant argued the government was obligated to produce *all* documents in the DOL's possession, including those from the civil investigation. *Id*. The Third Circuit disagreed and reversed the district court. There was no "joint investigation" with the DOL employees at issue, the court explained, nor "any indication that the prosecution had any sort of control" over those employees. *Id*. Thus, the DOL employees who had handled the civil investigation were not part of the prosecution team. *Id*. That "other agents in the DOL participated in" the criminal investigation, the court emphasized, "*does not mean that the entire DOL is properly considered part of the prosecution team*." *Id*. at 218 (emphasis added).

These are just two examples of settled principles. *See also, e.g.*, *United States v. Garcia-Martinez*, 730 F. App'x 665, 675 (10th Cir. 2018) (holding that federal immigration agencies were not part of the prosecution team); *United States v. Casas*, 356 F.3d 104, 116 (1st Cir. 2004) (finding no obligation to obtain document in the possession of another federal agency not under the prosecution's control); *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir. 2003) (refusing to "sen[d] the prosecution on an open-ended fishing expedition" through the Bureau of Prison's files); *United States v. Jordan*, 316 F.3d 1215, 1257 (11th Cir. 2003) (defendant's requests for documents from other agencies were beyond the scope of the government's discovery obligations).

These principles directly apply here. This case was jointly investigated by agents of the FBI, IRS, and NSF-OIG. The government has produced all NSF documents in the criminal files of the investigating agents. And when the Defendant sought specific additional documents from NSF in July 2021 and pointed out a reasonable basis for their materiality, the government passed Defendant's request on to NSF-OIG and facilitated the production of additional documents.

But the government is not obligated by Rule 16 to facilitate Defendant's ever-widening fishing expeditions. The NSF agency as a whole is not part of the prosecution team. *Morris*, 80

F.3d at 1169–70; *Pelullo*, 399 F.3d at 216.   And even if it were, the government's discovery obligations would be limited to the specific individuals who were part of the investigation.   *Id.* For example, Defendant asks for all files related to a separate administrative investigation into a different issue: Defendant's plagiarism on an earlier grant application.   As the above cases make clear, however, files from separate administrative investigations do not fall within Rule 16. *Pelullo*, 399 F.3d at 216.   Notably, Defendant has taken the position that evidence regarding this administrative investigation is not admissible.   Doc. 51 at ¶ 9 (Defendant describing the plagiarism investigation as "unrelated").   The government responded by explaining that the *existence* of this prior investigation is part of Defendant's own explanation for his fraudulent conduct as to the grant application underlying the indictment.   Doc. 64 at 9-10.[4]

Defendant's other proposed requests to NSF are even broader, including "all documents relating to the NSF's grant approval process" and all documents within NSF's possession "regarding the National Natural Science Foundation of China, any Chinese Universities, or the Government of the People's Republic of China."   Doc. 83 at 2-3.   It is unclear why such information would be material to the defense, and it would be extraordinarily burdensome to respond to such a request given that NSF receives about 50,000 proposals each year.   These broad requests assume that the files of the entire NSF agency—a large federal agency with a multi-billion-dollar budget and many employees—are within the prosecution team's possession.   They are not.   And neither Rule 16 nor *Brady* imposes '"an affirmative duty upon the government to

_____

[4] When interviewed by agents, Defendant admitted that he should have disclosed additional information to NSF.   But he feared that making the disclosure would "stack" on to the existing plagiarism investigation, doing further damage to his relationship with NSF.   Still, in its response, the government indicated it did not intend to introduce evidence about the *outcome* of the plagiarism investigation unless it was elicited by the defense, or to rebut evidence from the defense about Dr. Xiao's character for truthfulness. Doc. 64 at 9-10.

take action to discover information which it does not possess.'" *Sutton v. Carpenter*, 617 F. App'x 434, 441 (6th Cir. 2015) (citation omitted).

The breadth and vagueness of Defendant's proposed document requests to NSF show why it is important for these requests to be funneled through Rule 17(c).  Rule 17(c) subpoenas are restricted "to specified, evidentiary items that are relevant and admissible."  *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992).  "Without that requisite specificity," the document requests are nothing more that fishing expeditions and cannot proceed.  *Id.*; *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) ("Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records . . . it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial").  Here, the express purpose of Defendant's current motion is to evade that specificity requirement.  Doc. 83 at 6 n.6 (expressing concern that "NSF will seek to narrow the subpoena or quash it altogether given Rule 17's arguably narrower scope").  The Court should not allow him to do so.

Against all of this, Defendant urges that NSF is part of the prosecution team because NSF voluntarily provided documents to the prosecution team.[5]  But it cannot be true that any entity voluntarily providing documents to the prosecution team becomes part of the prosecution team or is within its control.  Many victims willingly provide information to the government.  That does not make them part of the prosecution team.  "[T]hat documents may be obtainable is insufficient" to establish government possession or control "[w]ithout a showing that evidence is possessed by people engaged in the investigation or prosecution of the case."  *United States v. Reyeros*, 537 F.3d

---

[5] The prosecution team requested those documents from NSF in an earlier effort to accommodate the Defendant's document requests.  Defendant's argument seems to be that having accommodated the defense's document requests once, the government is required to *continue* doing so going forward.  Not so.

270, 284 (3d Cir. 2008).  "The 'mere fact that the Government may have requested and received documents from [another agency] in the course of its investigation does not convert the investigation into a joint one.'"  *United States v. Ferguson*, 478 F. Supp. 2d 220, 238–39 (D. Conn. 2007) (alteration in original) (quoting *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006)).  Where "defendants allege only that various of the Federal Entities either conducted their own investigations or made documents available to the prosecution," they have failed to show that those entities are "part of the 'prosecution team.'"  *United States v. Chalmers*, 410 F. Supp. 2d 278, 290 (S.D.N.Y. 2006) (citing *United States v. Volpe,* 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999)); *United States v. Upton*, 856 F. Supp. 727, 750 (E.D.N.Y. 1994).

Defendant also argues that NSF is part of the prosecution team because its employees (or former employees) will be witnesses at trial.  It is true that NSF employees will be witnesses at trial.  NSF, after all, is the victim for Counts One and Two of the indictment.  But, again, this does not make NSF or its employees part of the prosecution team.  Serving as a witness, including as an expert witness, does not make a person part of the prosecution team.  *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (explaining that witnesses stand "in a very different position in relation to the prosecution than do police officers and other governmental agents").

Accordingly, the Court should rule that NSF as a whole is not part of the prosecution team, and, therefore, any requests for NSF documents not in the possession and control of the prosecution team should proceed under Rule 17(c).

**II.     Defendant is entitled to agents' final interview reports, but not to agents' rough notes.**

Next, the Defendant argues that the government must produce agents' rough notes from witness interviews in this case, even though the government has (and will continue) to produce written interview reports or "302s."  Doc. 83 at 8.

The rule governing this request is straightforward.  "Rule 16(a)(2) expressly exempts from disclosure 'reports, memoranda, or other internal government documents made by . . . [a] government agent in connection with investigating or prosecuting the case."  *United States v. Watts*, No. 14-CR-40063-JPG, 2016 WL 739224, at *3 (S.D. Ill. Feb. 25, 2016) (citation omitted).  The government typically does not produce handwritten notes unless they contain discoverable information.  Why?  Because these notes are only meant to be incomplete memory aids, not verbatim reproductions or finished products.  *Id.*  Notes often must be supplemented by the agent's memory, can contain incomplete statements jotted down on the fly, and can contain undiscoverable work product or agent's impressions.  As the Court has explained before, the "purpose" of the rough notes is simply to help the agent prepare the final report.  *Id.*

"As a general rule," then, "notes and memoranda prepared by Government agents are not discoverable under Rule 16 so long as the Government turns over a written report that contains all the information found in the notes or memoranda."  *Id.* (citing *United States v. Coe*, 220 F.3d 573, 582 (7th Cir. 2000); *United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997)); *see also United States v. Thomas*, No. 06-CR-684, 2007 WL 2076029, at *2 (N.D. Ill. July 12, 2007) ("[N]ormally a defendant is not entitled to copies of the original notes because normally the agents incorporate their notes into an official summary.") (rejecting request for notes).   Here, the government has produced written reports containing all discoverable information in the

handwritten notes, so Defendant has offered "no legal basis to compel the government to produce" the handwritten notes. *Muhammad*, 120 F.3d at 699.

Defendant's motion flips this general rule on its head. Defendant claims he is entitled to the notes so he can "independently verify" the accuracy of the written reports. Doc. 83 at 8. But if, as Defendant suggests, reports are presumed incomplete until the defendant can view handwritten notes and independently verify the report's completeness, then notes would g*enerally* and *normally* be discoverable. The exception would swallow the rule.

But as *Watts* and *Thomas* explain, notes are generally and normally *not* discoverable until Defendant offers some reason to believe the interview reports are incomplete. *Watts*, 2016 WL 739224, at *3 ("The defendant has made no allegations of bad faith at this point."); *Thomas*, 2007 WL 2076029, at *2. Defendant offers no reason to believe the interview reports are incomplete here. Doc. 83 at 8. Thus, his motion should be denied. *Watts*, 2016 WL 739224, at *3; *see also*, *e.g.*, *United States v. Mikhail*, No. 05-CR-501, 2006 WL 3827323, at *4 (N.D. Ill. Dec. 27, 2006) ("Spitz has offered only generalized speculation that the Form 302 reports *might* be inaccurate. Before the court embarks upon any comparison between investigators' notes and their summaries . . . Spitz must make a colorable claim that the summaries are inaccurate.").

In the alternative, the government is willing to produce the rough notes and final interview reports to the Court in camera, so the Court can determine if the rough notes contain any discoverable information not included in the final interview reports. The case law makes clear, however, that this is not required here. *Id*.

### III.    Surveillance reports.

Finally, Defendant seeks unredacted surveillance reports.  This issue has been resolved.  If the parties are unable to proceed as planned, the government will move forward under the procedures provided by the Classified Information Procedures Act (CIPA).

### CONCLUSION

For the foregoing reasons, the government respectfully requests that Defendant's motion for discovery be denied.

Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

s/ *Peter T. Reed*

PETER T. REED
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
Peter.Reed@usdoj.gov
(618) 628-3700

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cr-40039-SMY |
| | ) | |
| MINGQING XIAO, | ) | |
| | ) | |
| Defendant. | ) | |

**Certificate of Service**

I hereby certify that on January 10, 2022, I caused the foregoing to be filed with the Clerk

of Court using the CM/ECF system, which will send notification of such filing(s) to all attorneys

of record.


s/ *Peter T. Reed*

PETER T. REED
Assistant United States Attorney