IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-cr-40039-SMY |
| | ) |
| MINGQING XIAO, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S MOTION FOR ISSUANCE OF RULE 17(C) SUBPOENA**

The government hereby moves to issue a Rule 17(c) subpoena to defendant Mingqing Xiao, through counsel, for pre-trial production of the following:

- All records required to be maintained pursuant to 31 C.F.R. § 1010.420 relating to foreign financial accounts that Mingqing Xiao had/has a financial interest in, or signature authority over, including records reflecting the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom such account is maintained, the type of such account, and the maximum value of each such account during each specified year.

- The remaining pages of Mr. Xiao's signed 2016 contract with Shenzhen University, which were omitted from Mr. Xiao's communication to SIUC on January 16, 2021.

- Communications from the Natural Science Foundation of Guangdong Province, Guangdong University of Technology, and/or their employees, notifying Mr. Xiao that he had been awarded the grant from the Natural Science Foundation of Guangdong Province and the grant number assigned to that grant.

As explained below, a subpoena for these records satisfies Rule 17(a) and would not compel an incriminating testimonial statement.

**LAW**

Federal Rule of Criminal Procedure 17 provides for the issuance of a subpoena to produce "any books, papers, documents, data, or other objects the subpoena designates." *See* Fed. R. Crim.

1

P. 17(c)(1). "[I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) (applying same test).

## ARGUMENT

I. **Foreign bank account records.**

   A. **Background.**

   Starting in 2016, Mr. Xiao began receiving payments of $2,000 a month from Shenzhen University in China. During an interview in December 2020, Mr. Xiao admitted to agents that these monthly payments were made into an account at Ping An Bank in China. The next month, agents asked for Mr. Xiao's consent to access his foreign bank accounts on his Huawei phone. After Mr. Xiao gave his written consent, law enforcement used the Huawei phone to access the Ping An Bank account application, and took a series of 99 snapshots documenting the account balance and account deposits and withdrawals over time.

   Having obtained Mr. Xiao's voluntary consent to view his foreign bank account records, agents did not separately serve Mr. Xiao with a grand jury subpoena for those foreign bank account records. After indictment, however, Defendant moved to suppress the foreign bank account records previously obtained by agents through Mr. Xiao's voluntary consent. *See* Doc. 39 at 14-19. The government has opposed the motion. *See* Doc. 46. Because Defendant has objected to the admissibility of the foreign bank account records obtained by consent, the government now

asks the court to issue a Rule 17(c) subpoena to Defendant for production of his foreign bank account records.

> **B.     By law, Defendant must maintain foreign bank account records and production of those records does not violate the Fifth Amendment.**

By law, United States persons having a financial interest in, or signature or other authority over a financial account in a foreign country must file a report of that account. *See* 31 C.F.R. § 1010.350. Count 7 of the superseding indictment charges Defendant Xiao with failure to file such a report in violation of 31 U.S.C. §§ 5314, 5322(a). *See* Doc. 57.

The Bank Secrecy Act provides that persons required to make such reports *also* must make and retain records of those accounts. *See* 31 C.F.R. § 1010.420. "Such records shall contain the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom the account is maintained, the type of such account, and the maximum value of each such account during the reporting period." *Id*. "Such records shall be retained for a period of 5 years and shall be kept at all times available for inspection as authorized by law," except that any period of time during which the taxpayer is under indictment for filing a false or fraudulent income tax return shall be excluded in calculating the five-year time period. *Id*.[1]

Compulsory production of these records does not violate an individual's Fifth Amendment privilege against self-incrimination because of the required-records doctrine. *See In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sept. 12, 2011*, 691 F.3d 903, 904 (7th Cir. 2012); *United States v. Zhong H. Chen*, 815 F.3d 72, 74 (1st Cir. 2016); *United States v. Chabot*, 793 F.3d 338, 341 (3d Cir. 2015); *United States v. Under Seal*, 737 F.3d 330 (4th Cir. 2013); *In re Grand Jury*

---

[1] Defendant was indicted for filing a false or fraudulent income tax return on October 5, 2021. Thus, he is required by law to maintain foreign bank account records from October 5, 2016 through the present. *See* 31 C.F.R. §§ 1010.350, 1010.420.

*Subpoena dated February 12, 2012*, 741 F.3d 339, 348 (2d Cir. 2013); *In re Grand Jury Proceedings*, No. 4-10, 707 F.3d 1262 (11th Cir. 2013); *In re Grand Jury Subpoena*, 696 F.3d 428 (5th Cir. 2012); *M.H. v. United States (In re M.H.)*, 648 F.3d 1067 (9th Cir. 2011). As the Supreme Court has explained, "the privilege which exists as to private papers cannot be maintained in relation to records required by law to be kept," because such records have attained "public aspects" and thus are quasi-public records. *See Shapiro v. United States*, 335 U.S. 1, 32-33 (1948). Under this doctrine, the Seventh Circuit has specifically held that a person *must* produce foreign bank account records in response to a grand jury subpoena *even when* such production may appear to be "testimonial, incriminating, and compelled." *See In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sept. 12, 2011*, 691 F.3d at 907-908. The court explained: "The voluntary choice to engage in an activity that imposes record-keeping requirements under a valid civil regulatory scheme carries consequences, perhaps the most significant of which, is the possibility that those records might have to be turned over upon demand, notwithstanding any Fifth Amendment privilege." *Id*. at 909.

   **C.**  **The government's request satisfies Rule 17(c).**

This request also satisfies the requirements of Rule 17(c). There is no doubt that the foreign bank account records are evidentiary and relevant. Counts four, five, and six of the indictment charge Defendant Xiao with making false statements on his tax returns in 2017, 2018, and 2019, namely, answering "no" in response to a question asking if he had a financial interest in or signature authority over a financial account located in a foreign country. *See* Doc. 57. And count seven charges that Defendant failed to file a report of foreign bank accounts for calendar year 2019. The requested records are direct proof of these allegations. *Id*.

The requested records also are not otherwise procurable reasonably in advance of trial by exercise of due diligence. Government agents obtained the requested records in advance of trial by obtaining Defendant's voluntary consent. But Defendant disputes the admissibility of those records, Doc. 39 at 14-19, leaving the government no choice but to obtain the records through a Rule 17(c) subpoena.[2]

Third, the government needs the specific records in advance of trial. Defendant is not obligated to take the stand at trial. Defendant is, however, obligated to produce records of his foreign bank accounts. Thus, Rule 17(c) is the proper vehicle to request their production.

Last, this application is made in good faith and is not intended as a fishing expedition. The government requests specific records that the recipient is required, by law, to maintain.

**II.   Other records.**

**A. Background.**

Defendant signed formal contracts with Shenzhen University in 2016 and in 2018. In his December 2020 interview with agents, however, Defendant initially denied being under contract with Shenzhen University (Agent: "Do you have a contract with them or?" Xiao: "not like a contract…"). But the next month, January 2021, he admitted for the first time to Southern Illinois University Carbondale (SIUC) that he did in fact have a contract with Shenzhen University and submitted a copy of a contract he signed on May 30, 2016. The version he sent to SIUC, however, omitted the last page of the contract, which governed compensation and income tax.

On or about November 27, 2016, Mr. Xiao submitted a grant proposal to the Natural Science Foundation of Guangdong Province. He submitted the proposal through Guangdong University of Technology, rather than through his primary employer, SIUC. On September 3,

---

[2] After indictment, Defendant through counsel filed late FBARs for 2017, 2018, and 2019. The statutory scheme, however, provides that persons must *both* file such reports *and* maintain supporting records.

2017, Mr. Xiao signed a sabbatical application submitted to SIUC which disclosed, for the first time, that "Recently, as a co-PI, I received an external grant from China (4 years) for a collaboration with Guangdong University of Technology." He also submitted a CV disclosing the grant: "Natural Science Foundation of Guangdong Province of China, Co-PI, RMB 1, 200, 000 (approximately $180, 000), 2018-2022 (with Shuting Cai and Xiaoming Xiong)." In January 2021, he admitted to SIUC that he had received about $30,000 in payments from a business in China for his work with Shuting Cai during this same time period. Mr. Xiao's CV and sabbatical application show that the Natural Science Foundation of Guangdong Province and/or Guangdong University of Technology notified Mr. Xiao that he had been awarded the grant.

**B. The Fifth Amendment does not bar production of these records.**

The production of these documents does not implicate the Fifth Amendment either. "[T]he Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a Testimonial Communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). For this reason, "the compelled surrender of a self-incriminating document" does not by itself violate the Fifth Amendment "unless the author had been forced to write the document." *Smith v. Richert*, 35 F.3d 300, 302 (7th Cir. 1994). The documents are not *testimonial* communications.

The only question, then is whether "the act of production is both 'testimonial' and 'incriminating.'" *Bear Sterns & Co. v. Wyler*, 182 F. Supp. 2d 679, 684 (N.D. Ill. 2002); *Smith*, 35 F.3d at 304 ("Smith could resist the production of nonrequired records only if the act of production would incriminate him"). Here, the act production would not be testimonial or incriminating because Defendant's prior statements have already communicated the existence of the requested documents and his possession of them. *Fisher*, 425 U.S. at 411 (explaining that

6

where "the existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers," there is no testimonial statement and thus no Fifth Amendment question).  He sent most of the 2016 contract to SIUC but omitted the final page.  And he acknowledged receiving the Guangdong Province grant in a signed statement to SIUC.  Thus, the act of production does not make any statement that Defendant has not already made.  *See Bear Sterns & Co.*, 182 F. Supp. 2d at 684 (explaining that Defendant must "tender some credible reason why a response" to the subpoena would be testimonial and incriminating).

### C. The government's requests satisfy Rule 17(c).

These requests also satisfy Rule 17(c).  Both the complete signed 2016 contract and the award notification are directly relevant to the charges in the indictment.  The documents are not reasonably procurable from the relevant institutions in China.  Production before trial is proper because the Defendant may not take the stand at trial.  And the requests are made in good faith and for specific documents, not as a fishing expedition.

### CONCLUSION

For the foregoing reasons, the government asks for issuance of a Rule 17(c) subpoena requesting the documents described in the motion.

Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney

*s/ Peter T. Reed*

PETER T. REED
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
Peter.Reed@usdoj.gov
(618) 628-3700

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:21-cr-40039-SMY |
| ) | |
| MINGQING XIAO, ) | |
| ) | |
| Defendant. ) | |

**Certificate of Service**

I hereby certify that on February 28, 2022, I caused the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

s/ *Peter T. Reed*

PETER T. REED
Assistant United States Attorney

8