**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 21-CR-40039-SMY |
| | ) | |
| MINGQING XIAO | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT MINGQING XIAO'S MOTION TO QUASH RULE 17(C) SUBPOENA**

i

## TABLE OF CONTENTS

I.   The Subpoena Is an Attempted End-Run Around Rule 16's Limits on the Right to Obtain Discovery from a Party Opponent ................................................................................ 4

II.   The Subpoena Violates the Fifth Amendment By Requiring a Testimonial Response or Testimonial Act of Production ........................................................................................ 7

   A.   Category I: "All Records Required to Be Maintained Pursuant to 31 C.F.R. § 1010.420". 9

      1.   Either Response to This Request Would Tend to Incriminate Dr. Xiao ......................... 9

      2.   The Required Records Doctrine Does Not Apply ......................................................... 13

   B.   Categories II and III Allegedly Omitted Contract Pages from Dr. Xiao's January 16, 2021 Communication to SIUC .......................................................................................... 15

III.   The Subpoena Fails to Meet the *Nixon* Requirements ....................................................... 17

IV.   The Court Should Exercise Its Discretion to Quash the Subpoena ................................... 20

The subpoena, issued under a Rule intended for discovery from "witnesses," is an improper attempt to make an end-run around both an inadequate pre-indictment investigation and Rule 16's limitations on discovery from counterparties. Rule 17(c) provides a mechanism for obtaining documents from a "witness," not a party, and Dr. Xiao has a constitutional right not to serve as a "witness" in the case against him. It would be unprecedented in the Seventh Circuit to enforce a post-indictment trial subpoena on a criminal defendant who has not been granted immunity. And even if such a subpoena were authorized by the Federal Rules of Criminal Procedure, the subpoena in this case violates the Constitution under *United States v. Hubbell*, 530 U.S. 27 (2000) (holding that the act of production is testimonial when it could be used as evidence of the document's existence, the defendant's possession or custody, or of the document's authenticity) and fails the test for trial subpoenas under *United States v. Nixon*, 418 U.S. 683 (1974). Moreover, the Court need not reach these questions of law because the last-minute circumstance of the Government's subpoena merits the exercise of judicial discretion to quash the subpoena rather than risk the unnecessary delay and waste of judicial resources, not to mention the distraction of the defense team from preparing for trial while having to further litigate these issues, that would be required in order to preserve the right to appellate review of a denial of a motion to quash. It is too late in the day for the Government to be issuing a pre-trial subpoena to a criminal defendant, and the subpoena should therefore be quashed, if not for legal insufficiency then as a matter of discretion.

## **FACTUAL BACKGROUND**

### I.   **The Charges**

The Government brings charges against Defendant Mingqing Xiao for two counts of wire fraud under 18 U.S.C. § 1343 (Counts 1 and 2) and one false statement count under 18 U.S.C. § 1001(a)(1) (Count 3), arising from Dr. Xiao's submission (on behalf of Southern Illinois University – Carbondale ("SIUC")) of a proposal to the National Science Foundation ("NSF") for

a $151,099 grant to fund his academic research in the field of theoretical mathematics. *See* Superseding Indictment at 1-5, Dkt. 57.  Twenty days before trial was to commence on October 25, 2021, when the matter did not resolve short of trial, the Government sought a Superseding Indictment further alleging three tax charges under 26 U.S.C. § 7206(a) (Counts 4 through 6) based on Dr. Xiao's tax return responses concerning foreign accounts, and one charge under 31 U.S.C. §§ 5314 and 5322, and 31 C.F.R. §§ 1010.350, 1010.306(c)-(d) & 1010.840(b) (Count 7) based on an alleged failure to file an FBAR for calendar year 2019. *Id.* at 5-7.  The Government's belated Superseding Indictment adding three new substantive charges necessarily required a continuance of the trial date.

## II.   <u>The Government's Pre-Indictment Investigation</u>

The Government had ample opportunity to investigate this case before indicting Dr. Xiao, much less before seeking issuance of this subpoena served just forty-seven days before the continued trial date (which itself was caused by its belated Superseding Indictment on the eve of the initial trial date).  Among other steps taken by the Government, federal law enforcement agents arrived unannounced at Dr. Xiao's home on December 3, 2020 to conduct an interview that lasted more than two hours and twenty minutes.  Immediately following that interview, a larger group of additional federal agents arrived at Dr. Xiao's home to execute a search warrant.  During the course of that search, federal agents seized hard copy documents, Dr. Xiao's passport and credit cards, two cell phones, and five computers, including devices that belonged to Dr. Xiao, devices that belonged to his family members, and devices SIUC provided Dr. Xiao for work.  Throughout that process, Dr. Xiao remained cordial and cooperative.  For example, when directed by federal agents, Dr. Xiao provided the associated telephone numbers and passwords for each of the phones seized during the search.  On January 21, 2021, federal agents returned to Dr. Xiao's house, ostensibly to return some of the seized electronic devices, but also told Dr. Xiao that he needed to sign a

"Consent to Assume Online Identity Authorization Form," to which he agreed.

The Government also acquired a massive volume of Dr. Xiao's electronic communications, including by obtaining very broad search warrants to obtain Dr. Xiao's emails from Google and from SIUC.  Throughout its investigation, however, the Government never sought discovery from Chinese entities, despite the existence of a mutual legal assistance agreement between the United States and China.[1]  *See* Letter from Peter Reed to Patrick Linehan at 3 (Aug. 11, 2021) (attached as Exhibit B) ("The government has not requested documents or information directly from universities or entities in China in connection with this case.").

## III.    The Rule 17(c) Subpoena

The Government filed a motion for the issuance of the subject Rule 17(c) subpoena on February 28, 2022.  The Court, without hearing argument from Dr. Xiao, granted the motion on March 8, 2022.  The Government served the subpoena on Dr. Xiao, through counsel, on March 9, 2022.

The subpoena sets forth three requests for documents:

> (I) All records required to be maintained pursuant to 31 C.F.R. § 1010.420 relating to foreign financial accounts that Mingqing Xiao had/has a financial interest in, or signature authority over, including records reflecting the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom such account is maintained, the type of such account, and the maximum value of each such account during each specified year.
>
> (II) The remaining pages of Mr. Xiao's signed 2016 contract with Shenzhen University, which were omitted from Mr. Xiao's communication to SIUC on January 16, 2021.
>
> (III) Communications from the Natural Science Foundation of Guangdong Province, Guangdong University of Technology, and/or

---

[1] Agreement Between the Government of the United States of America and the Government of the People's Republic of China on Mutual Assistance in Criminal Matters (attached as Exhibit A).

their employees, notifying Mr. Xiao that he had been awarded the grant from the Natural Science Foundation of Guangdong Province and the grant number assigned to that grant.

*See* Subpoena to Produce Documents, Information, or Objects in a Criminal Case (attached as Exhibit C).  Dr. Xiao now brings this Motion to seek the Court's quashal of the subpoena.[2]

## **ARGUMENT**

Having chosen to move forward and indict Dr. Xiao, the Government is now attempting to make Dr. Xiao a witness against himself by ordering him to produce discovery only five days before trial begins on April 25.  The Government's subpoena—proposing to require a criminal defendant to identify, select, and authenticate the documents to be used in his own prosecution without any form of immunity—is without precedent in the Seventh Circuit and without justification.  Among other reasons, the Court should quash the subpoena for four reasons: (I) the subpoena is an abuse of Rule 17 in that it seeks documents not required to be produced under Rule 16; (II) compelling Dr. Xiao to respond or produce the requested documents would violate his Fifth Amendment right against self-incrimination; (III) the subpoena fails the Supreme Court's test for an early-return subpoena set forth in *United States v. Nixon*; and (IV) quashing the subpoena is a proper exercise of the Court's discretion to avoid an unnecessary and costly contempt and appeals process that would be necessary to review the subpoena's enforcement.

---

[2] Although ordinary practice would be for Dr. Xiao to invoke his Fifth Amendment privilege in response to such a subpoena and await the Government's motion to compel, enforce, or seek immunity, *see, e.g.*, *Hubbell*, 530 U.S. at 31; *United States v. Calandra*, 414 U.S. 338, 341 (1974); *Curcio v. United States*, 354 U.S. 118, 119-20 (1957); *Kinoy v. Mitchell*, 331 F. Supp. 379, 381 & n.9 (S.D.N.Y. 1971) (holding that attack on subpoena that had not yet required appearance and was not presently being enforced was "premature"), Dr. Xiao files this motion to quash in an effort to expedite proceedings in light of the forthcoming trial date.  In any event, the motion is prompt as required by Rule 17(c)(2).

I. **The Subpoena Is an Attempted End-Run Around Rule 16's Limits on the Right to Obtain Discovery from a Party-Opponent**

The plain text of Rule 17 permits a subpoena to order a "witness" to produce documents. Fed. R. Crim. P. 17(c)(1). There is no mention of subpoenas to a "party," and Dr. Xiao has a constitutional right not to be a witness in this case.

The Government has broad investigatory powers at its disposal during the course of an investigation. It can seek and execute search warrants on investigatory targets and other third parties. It can issue grand jury subpoenas for documents and witness testimony. And it can seek documents and other information from non-U.S. law enforcement authorities in other jurisdictions, through Multi-Lateral Assistance Treaties, or MLATs. However, once it files an indictment against a defendant, the Federal Rules of Criminal Procedure impose restrictions on the type of discovery the Government can seek from the defendant. Those restrictions are codified not in Rule 17 but in Rule 16, and specifically Rule 16(b)(1)(A):

> (A) Documents and Objects. If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
> (i) the item is within the defendant's possession, custody, or control; and
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim P. 16(b)(1)(A). In other words, the Government is entitled to discovery of certain items within the defendant's possession, custody or control that "the defendant intends to use in the defendant's case-in-chief," and only where the defendant "requests disclosure under Rule 16(a)(1)(E) and the government complies." *Id*. "[I]f [an] item is not discoverable under Rule 16, a party cannot make it discoverable simply by subpoenaing it under Rule 17." *United States v. Barnes*, No. 04-cr-186, at *2 (S.D.N.Y. Apr. 2, 2008); *United States v. Buck*, No. 84-cr-220, 1986

WL 14970, at *1 (S.D.N.Y. Dec. 15, 1986) ("It is now well settled that since the 1966 amendments to Rule 16, which significantly expanded the scope of pretrial discovery, the discoverability of items under Rule 16 determines whether those items are subject to a Rule 17(c) subpoena."); *United States v. Walters*, 558 F. Supp. 726, 727-28 (D. Md. 1980) (noting that it was "inappropriate" for the Government to "attempt[] to obtain under Rule 17(c) what it cannot obtain under Rule 16").[3] Dr. Xiao has complied with his production obligations under Rule 16. The records involved herein do not fall within the scope of Rule 16 and therefore are not discoverable from a party.

The Government has cited no Seventh Circuit authority, and defense counsel is aware of none, allowing the Government to use Rule 17 to subpoena documents from the defendant after indictment without a grant of formal immunity. The Government has broad investigatory powers prior to an indictment—search warrants, grand jury subpoenas and mechanisms offered international treaties and MLATs. Since the beginning of this investigation at least twenty months ago, the government has had at its disposal sufficient alternative means to obtain every document requested in the subject subpoena. Having chosen to indict, however, the Government cannot continue to use Rule 17 to investigate and it certainly cannot do so by serving such a subpoena on the defendant. The Government has provided no justification for why this Court should permit discovery of evidence not available under Rule 16.

---

[3] *See also United States v. Newell*, 192 F.R.D. 587, 588 (N.D. Ill. 2000) (quashing government's subpoena because "Fed. R. Crim. P. 16(b)(2) does not authorize discovery of statements made by the defendant or his attorneys in connection with the case, and Rule 17(c), which authorizes a subpoena in certain circumstances, is not an 'additional means of discovery'" (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951))); *accord United States v. Arias*, 373 F. Supp. 2d 311, 313 (S.D.N.Y. 2005) ("[T]o the extent the [subpoenaed documents] came from the Government and are not discoverable by Arias under Rule 16, Arias may not subpoena a co-defendant or related party to make an end-run around the discovery limitations of Rule 16.").

## II.   The Subpoena Violates the Fifth Amendment Because It Compels a Testimonial Response or a Testimonial Act of Production

"The Fifth Amendment privilege against self-incrimination is one of the core concepts of our adversary judicial system." *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1149 (7th Cir. 1981). "[T]he Fifth Amendment privilege 'must have a broad construction in favor of the right which it was intended to secure.'" *Id.* at 1150 (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562 (1892)); *accord Maness v. Meyers*, 419 U.S. 449, 461 (1975) ("This Court has always broadly construed [the Fifth Amendment']s protection to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action."). The Seventh Circuit has instructed that courts must exercise "constant vigilance … against the narrowing of this fundamental constitutional protection." *Corrugated Container*, 661 F.2d at 1150. "[T]o the extent any doubt exists regarding the validity of the claimed Fifth Amendment privilege, the benefit of that doubt must go to the witness asserting the privilege." *Id.* at 1151. "The protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness*, 419 U.S. at 461 (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

Both parties necessarily agree that documents sought by the subpoena would "furnish a link in the chain of evidence" that "could be used against [Dr. Xiao] in a criminal prosecution." *Id.* Indeed, the Government was obligated by *United States v. Nixon* to argue in its Motion for the subpoena's issuance that it intends to so use them. The Government is not permitted to subpoena from a defendant what it wishes to use against him at trial. *See Rhode Island v. Innis*, 446 U.S. 291, 301 n.5 (1980) (noting that "incriminating response" includes "any response—whether

inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial"). The question before the Court (with the exception of Category I, *see infra* § II.A.1) is whether the act of producing the documents will have a compelled testimonial aspect. This is because even where "the contents of a document may not be privileged, the act of producing the document may be" where that act is testimonial. *United States v. Doe*, 465 U.S. 605, 612 (1984). The act of producing subpoenaed documents is testimonial where the act itself communicates information, such as "admit[ting] that the requested papers existed, were in [the witness's] possession or control, [or] were authentic." *United States v. Hubbell*, 530 U.S. 27, 36 (2000) (citing *Doe*, 465 U.S. at 613 & n.11).

Alternatively, production can be testimonial where it forces the witness to "make extensive use of 'the contents of his own mind' in identifying the … documents responsive to the requests in the subpoena." *Id.* at 43 (citing *Curcio v. United States*, 354 U.S. 118, 128 (1957)). This is particularly important when dealing with a regulation as fundamentally ambiguous and imprecise as 31 C.F.R. § 1010.420.

Here, either response that Dr. Xiao could make would be testimonial. A response that "no such documents exist" would be a traditionally testimonial statement that could be used to establish that Dr. Xiao violated a duty to maintain documents (at least as to Category I). The act of producing responsive documents, on the other hand, would be a testimonial statement because it would arguably provide the Government with evidence that the documents exist, that the documents were in Dr. Xiao's permission, and that the documents are authentic and therefore potentially admissible against Dr. Xiao. The Fifth Amendment therefore protects Dr. Xiao from being forced to respond to the subpoena.

A. **Requiring Dr. Xiao to Either Respond to Category I or Produce Responsive Documents Would Violate the Fifth Amendment**

1. **Either Response to This Request Would Tend to Incriminate Dr. Xiao**

To invoke the protection of the Fifth Amendment, a witness need not establish that an answer to the question or an explanation why an answer cannot be given will in fact incriminate. *Hoffman*, 341 U.S. at 486-87. The witness need only "demonstrate any possibility of prosecution which is more than fanciful" to meet his or her burden. *See Folding Carton Anti-Trust Litig.*, 609 F.2d at 871; *see also Malinich v. Toyota Motor Co.*, 109 F.R.D. 414, 416 (N.D. Ind. 1986) (permitting invocation of Fifth Amendment because "[a]lthough providing answers to some of the questions propounded by Toyota would not establish directly that Steiner was responsible for the death of Malinich, that evidence, and possibly evidence derived therefrom, might establish a link in the chain of prosecution"). "A court's inquiry should focus 'on what a truthful answer might disclose, rather than on what information is expected by the questioner.'" *Ruderman v. Bank of America, N.A.*, No. 10-cv-6153, 2013 WL 6729951, at *2 (N.D. Ill. Dec. 20, 2013) (quoting *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 480 (1972)).

Category I of the subpoena seeks all records required to be maintained pursuant to 31 C.F.R. § 1010.420. Section 1010.420 (the language of which is largely quoted verbatim in Category I) in turn appears to require the retention of records sufficient to reflect (1) the name in which each such account is maintained, (2) the number or other designation of such account, (3) the name and address of the foreign bank or other person with whom such account is maintained, (4) the type of such account, and (5) the maximum value of each such account. 31 C.F.R. § 1010.420; *see also* Exhibit C, at 2. This same information could have been sought through use of the China MLAT much earlier in this investigation without eliciting any testimonial act of production in violation of Dr. Xiao's Firth Amendment rights, but was not. In this case, Dr. Xiao's

9

truthful response to Category I might be (1) no such documents exist in his possession, or (2) the production of documents, which may or may not be some or all of what § 1010.420 requires. Although one scenario or the other would suffice, under the facts of this case, both possible answers would tend to incriminate Dr. Xiao and therefore merit constitutional protection.

First, Dr. Xiao's response that no such documents exist in his possession would incriminate Dr. Xiao. The Government's submission alleges that the Bank Secrecy Act obligates Dr. Xiao to maintain the records it requests. Gov't Mot. for Issuance of Rule 17(c) Subpoena at 3, Dkt. 99 (hereafter "Issuance Motion") (citing 31 C.F.R. § 1010.420). The Bank Secrecy Act imposes criminal penalties on willful violation of such regulations. *See* 31 U.S.C. § 5322. Because Dr. Xiao's response that he has no such documents would tend to furnish a link in the chain of evidence as to proof of an element necessary to prosecute him under 31 U.S.C. § 5322, he is constitutionally protected from being forced to respond. *See, e.g., First Tenn. Bank N.A. v. Service Foods Inc.*, No. 15-cv-2940, 2016 WL 11440135, at *12 (N.D. Ga. Nov. 11, 2016) ("[T]he act of producing certain documents (and not others) certainly communicates a fact that is testimonial—that documents either exist or do not exist to support [various statements], and that Pounders relied on those documents. … Moreover, Pounders' act of producing some, ***or no documents*** can be used to show that the Personal Financial Statements and the Borrowing Base Certificates have no factual support – and thus, contain material misrepresentations. Such facts can support a criminal bank fraud charge." (emphasis added); *see also Ohio v. Reiner*, 532 U.S. 17, 21 (2001) ("[T]ruthful responses of an innocent witness, as well as a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth.").

Second, Dr. Xiao's production of such records would tend to incriminate him by providing testimonial evidence (i) that such records or accounts existed; (ii) that such records were in Dr.

Xiao's custody; (iii) of an implicit admission from Dr. Xiao as to whether certain types of documents must be retained under 31 C.F.R. § 1010.420;[4] and (iv) the potential authenticity of evidence that the Government concedes it is having trouble otherwise establishing. The Government's submission proves that any action in response to this subpoena would violate the Fifth Amendment privilege against self-incrimination. If Dr. Xiao produces any bank records, then he will prove that he had such an account and could have filed a report regarding the account—the failure to do so being precisely the conduct alleged in Count 7, as the Government conceded in its Issuance Motion. *See* Issuance Motion at 3.

In sum, the production would serve as evidence that Dr. Xiao *agrees* with the government's judgment that he had an obligation to maintain such records, possessed the records he was allegedly obligated to report to FinCEN as described in Count 7, that he was capable of reporting to FinCEN if he wished, and that his failure to do so was therefore intentional and willful. But it is black-letter law that even where a defendant has allegedly engaged in an unlawful activity, he cannot be compelled to give evidence against himself. *Marchetti v. United States*, 390 U.S. 39, 51 (1968). Moreover, the cognitive process that Dr. Xiao must engage in to interpret the meaning and scope of the subpoena is the equivalent of oral testimony expressing "[Dr. Xiao's] belief that the [documents he is producing] are those described in the subpoena." *United States v. Doe*, 465 U.S. 605, 613 (1984) (quoting *Fisher v. United States*, 425 U.S. 391, 410(1976)). It is difficult to imagine a subpoena in which a production would be more incriminating than this one.

---

[4] 31 C.F.R. § 1010.420 requires the retention of the documents described therein for a period of 5 years. Category I could thus require Dr. Xiao to produce documents he possesses for some years but state that he has no responsive documents for others. Such a production would also be testimonial because it could tend to prove Dr. Xiao's recognition that certain documents he produces fall within § 1010.420's scope and an admission that he had no documents of this type for other years.

In addition, the act of producing the requested bank records would be testimonial because it would furnish the government with a means of authenticating the documents. In order to disprove the act of production's authentication usage, the Government must "establish that it can *independently* verify that the compelled documents 'are in fact what they purport to be.'" *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 912 (9th Cir. 2004) (quoting *United States v. Stone*, 976 F.2d 909, 911 (4th Cir. 1992)) (emphasis added). "Independent verification not only requires the government to show that the documents sought to be compelled would be admissible independent of the witness's production of them, but also inquires into whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents, and thereby tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents." *Id.*; *United States v. Lawrence*, No. 13-cr-62579, 2014 WL 2153944, at *4 (S.D. Fla. Apr. 29, 2014) (denying IRS petition to enforce document request because even though the Government had seen the documents' contents, it did not have a witness competent to authenticate the documents, and "[t]hus, the authenticity of the documents is not a foregone conclusion" absent the act of production) Here, the Government cannot come close to satisfying its burden on either front. Setting aside the Government's requirement that Dr. Xiao use his discretion in determining which documents he was "required to maintain" under an inexact regulation like § 1010.420, the Government already has conceded that it has issued this subpoena specifically because it cannot independently authenticate the purported documents. Issuance Motion at 2-3 (noting that the subpoena issued "[b]ecause Defendant has objected to the admissibility of the [purported] foreign bank account records" that the Government currently has in its possession). Under the circumstances, Dr. Xiao's production will authenticate evidence against him, a consequence prohibited by the Fifth Amendment.

12

In *United States v. Doe*, a grand jury issued a subpoena for, *inter alia*, production of bank statements from accounts at a bank in the Grand Cayman Islands. *United States v. Doe*, 465 U.S. 605, 607 (1984). The district court held that enforcement of the subpoenas would violate the defendant's Fifth Amendment rights because the government failed to prove that "the existence, possession and authenticity of the documents" could be proved without the act of production. 465 U.S. at 613 n.11. Both the Third Circuit and the Supreme Court affirmed. 465 U.S. at 614 & n.12; *see also In re Grand Jury Empanelled Mar. 19, 1980*, 680 F.2d 327, 335 (3d Cir. 1982). In so doing, the Supreme Court observed that "[b] producing the documents, respondent would relieve the Government of the need for authentication" should it obtain the same documents from another source. *Id.* at 614 n.13 (noting also that it would tacitly admit existence and possession). Just as the respondent in Doe was protected from producing documents that would aid the Government in authenticating potential evidence, so too is Dr. Xiao protected from producing documents that would help the Government authenticate the purported evidence in its possession.

### 2. <u>The Required Records Doctrine Does Not Apply</u>

The Government argues that despite the plainly inculpatory nature of the act of production, the "required-records doctrine" excepts these records from the Fifth Amendment's protection. The Supreme Court has made clear, however, that the modern Fifth Amendment privilege against self-incrimination is "unequivocal and without exception." *In re Gault*, 387 U.S. 1, 47 (1967). Nothing short of derivative use immunity will overcome the privilege. *See Kastigar v. United States*, 406 U.S. 441, 445 (1972). The case on which required records decisions cited by the Government rest is *Shapiro v. United States*, 335 U.S. 1 (1948)*,* in which the Court held that the *contents* of business records required by a regulatory scheme were not privileged from production under the then-existing Fifth Amendment doctrine that turned on the "private" or "public" nature of documents'

contents. *See Shapiro*, 335 U.S. at 18. That principle, however, was rendered irrelevant in *Fisher v. United States*, where the Court abandoned the emphasis on the papers' contents in favor of the act of production doctrine, 425 U.S. 391, 409 (1976), and the Supreme Court has never applied the required records doctrine in any post-*Fisher* act of production cases.

Even if the required records doctrine remains viable under *In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sept. 12, 2011*, 691 F.3d 903 (7th Cir. 2012), on which the Government's Issuance Motion primarily relies, the court should not apply it in these unique circumstances. Unlike in *Special Grand Jury Subpoena*, this is a trial subpoena seeking records directly related to charges that have already been brought against Dr. Xiao. The court in *Special Grand Jury Subpoena* held that "a witness" could not resist a "grand jury subpoena" seeking otherwise unavailable documents because the government must have "the means … to inspect the records it requires an individual to keep as a condition of voluntarily participating in [a] regulated activity." 691 F.3d at 908-09. Setting aside the fact that the Supreme Court has repeatedly rejected the notion that a defendant can constitutionally be put to the choice of forgoing a regulated activity or forgoing Fifth Amendment protections,[5] that justification simply does not apply here. To the extent that the Government had the means to engage in such discovery, the proper means was a grand jury subpoena, not a trial subpoena that is supposed to be limited to evidence. Moreover, Dr. Xiao, ignorant of any regulatory or record-keeping requirements associated with foreign bank accounts, did not, unlike the individual under investigation in *Special Grand Jury Subpoena*,

---

[5] *See Marchetti v. United States*, 390 U.S. 39, 51 (1968) (rejecting the proposition that statute requiring registration and payment of gambling taxes "merely impose[d] on the gambler the initial choice of whether he wishes at the cost of his constitutional privilege, to commence wagering activities" because "an inference of antecedent choice" does not "abrogate the privilege's protection"); *Grosso v. United States*, 390 U.S. 62, 68 (1968) (holding that statutory obligations directed almost exclusively on individuals suspected of criminal activities was not "regulatory" in nature).

"make a voluntary choice to engage in an activity that imposes record-keeping requirements under" the BSA, and therefore was unaware of the consequence of "the possibility that those records might have to be turned over upon demand, notwithstanding any Fifth Amendment privilege."[6]  Under these circumstances, *In re Special Return Grand Jury* should not control, and the court should enforce Dr. Xiao's Fifth Amendment rights as to Category I.

### B.  Requiring Dr. Xiao to Produce Documents Responsive to Categories II and III Would Violate the Fifth Amendment

Categories II and III seek documents that the Government concedes it has not seen and that it does not know exist, but nonetheless could have pursued years ago through the China MLAT or other means of investigation.  Specifically, they seek (1) contract pages allegedly omitted from Dr. Xiao's January 16, 2021 communication with SIUC (Category II), and (2) unidentified communications between unnamed employees of several Chinese entities on the hand and Dr. Xiao on the other regarding his receipt of a grant from the Natural Science Foundation of Guangdong Province (Category III).  Ex. A at 2.  The act of producing these documents would tend to incriminate Dr. Xiao both because it would acknowledge the existence and custody of such documents and because the government cannot independently verify the authenticity of any such documents but for the act of production. But for Dr. Xiao's act of producing the subpoenaed documents, the Government will not be able to "independently verify that the compelled documents 'are in fact what they purport to be.'"  *Grand Jury Subpoena*, 383 F.3d at 912.

As to Category II, the Government alleges that a page of the contract "govern[s] compensation and income tax," and that Dr. Xiao had possession of this page but hid it from SIUC.

---

[6] Indeed, this language from *Special Return Grand Jury* suggests that the Seventh Circuit views "voluntary" participation in the BSA's regulatory scheme as an effective waiver of one's Fifth Amendment privilege.  However, waiver of one's Fifth Amendment right must be knowing and voluntary. *Miranda v. Arizona*, 384 U.S. 436, 469 (1966).  That was simply not the case here.

*See* Issuance Motion at 5. Putting aside the utter lack of evidence cited in support of this accusation, any compelled production of additional pages would prove not only that there were pages that were omitted but that Dr. Xiao had possession of the pages, thereby making their omission potentially intentional.

As to Category III, the Government alleges that Dr. Xiao received a grant from Guangdong University of Technology (GUT) that he did not disclose in his NSF grant application, and that therefore, based on government assumptions, he must have received a communication from GUT notifying him of that. To be clear, Dr. Xiao was never awarded that grant. However, any certification he would offer that he has no documents responsive to Category III could be offered by the Government as evidence that, like its baseless theory regarding the last page of the Shenzhen contract, he must have destroyed or deleted evidence of the award.[7] This incriminating evidence based on the act of producing the allegedly responsive communications is protected under the Fifth Amendment as interpreted by the Supreme Court in *Hubble*.

The Government's submission does not address *Hubbell* and the act of production at all, instead focusing only on *Fisher* and stating without support that "the act of production [will] not make any statement that [Dr. Xiao] has not already made." Issuance Motion at 7. The government's unsupported claim is meritless. It is the Government's burden to "establish[] that the existence, possession, and authenticity of the documents sought [are] a foregone conclusion." *Grand Jury Subpoena*, 383 F.3d at 910; *cf. Hubbell*, 530 U.S. at 44-45 (emphasizing that the narrow foregone conclusion exception applied in *Fisher* because "the Government already knew that the documents were in the attorneys' possession and could independently confirm their

---

[7] And even if Dr. Xiao had documents responsive to Category III, his act of producing such communications would be testimonial evidence of the documents' authenticity, and that he was aware of the award.

existence and authenticity through the accountants who created them"). Contrary to the Government's submission, Dr. Xiao has not made the statements inherent in the act of production. Dr. Xiao has not stated that he possessed additional pages of a contract that he withheld, has not stated that he possessed communications described in Category III, and has not stated that any produced documents are authentic. Because the act of producing documents would risk communicating those three testimonial statements, it is protected by the Fifth Amendment, and the subpoena must be quashed.

### III.   The Subpoena Fails to Meet the *Nixon* Requirements

Even if a Rule 17(c) subpoena were appropriate here (it is not) and there was no violation of the Fifth Amendment (there is), the government must still show (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is not intended as a general "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 699-700 (1974). The Government's subpoena fails on all four counts.

First, the subpoena does not seek evidentiary and relevant documents. The Government cannot independently authenticate any of the documents being sought and they therefore are inadmissible as evidence.

Second, the documents sought were otherwise procurable in advance of trial had the Government exercised due diligence. The Government is given a mechanism to engage in investigation. That mechanism is the grand jury. The grand jury is empowered to investigate by issuing subpoenas, utilizing the MLAT process, or writing letters rogatory. Such steps were far easier and more basic than the steps that the Court has held Dr. Xiao must take in resorting to the

state FOIA process and its attendant delays and incomplete productions. *See* Mar. 8, 2022 Tr. at 15 (indicating that the Court would not compel a subpoena response if "the information you seek can be procured in another way," such as a FOIA request). Indeed, the Government itself argued that Dr. Xiao—despite being a non-government party without the State Department's support— should be forced to use the letters rogatory process before seeking remote testimony. Gov't Sur-Reply to Def.'s Mot. to Permit Remote Trial Testimony, Dkt. 73-1. If such a process is possible for a non-government party to seek testimony, then *a fortiori* it is possible for the Government to seek documents. In addition, the Government could have also sought the requested documents, all of which by the Government's own characterization of them either originated or were sent to China, through its MLAT with China, which provides a mechanism for obtaining documents existing there. *See* Agreement Between the Government of the United States of America and the Government of the People's Republic of China on Mutual Assistance in Criminal Matters (attached as Exhibit A), at Art. 1, § 2(c); Arts. 4 & 10. It chose not to use these basic criminal discovery tools,[8] and instead chose to indict first and ask questions (via Rule 17(c) subpoena) later.

Third, the Government can prepare for trial without any production in response to the subpoena. The Government indicted this case without issuing the subpoena. "Once an indictment has been returned, the Government is presumed to be ready to proceed to trial," *United States v. Aguilar*, 831 F. Supp. 2d 1180, 1184-85 (C.D. Cal. 2011), logically precluding the proposition that the Government would need to rely on trial subpoenas to gather evidence necessary for trial preparation. Since then, the Government has repeatedly averred that it is "ready for trial," and was presumably ready to do so without the requested documents within days of the original trial date, before it superseded with the addition of Counts 4 through 7. The Government cannot now turn

---

[8] *See* Exhibit C at 3.

around and claim that it can satisfy *Nixon*'s requirement that only objects necessary for trial preparation be produced before trial.  It is simply illogical.

Fourth, the Government is on a fishing expedition with respect to Categories II and III and the subpoena is overbroad with respect to Category I.  The Government has no idea whether the documents exist or what they say.  This is precisely what the Court ruled Dr. Xiao could not do: the Court repeatedly required Dr. Xiao to demonstrate beyond common sense and assumptions "that the documents ought exist."  Mar. 8, 2022 Tr. at 18-19; *id.* at 19 (holding that there was "no demonstration or submission that indicates that any such documents in fact exist" that were responsive to a request for documents related to a three-day email exchange in late April 2019); *id.* at 20 (there must be "information that there were email exchanges or that they did exist," not "that there would have been or might have been or could possibly be"); *id.* at 27 ("I'm not persuaded that you know such evidence exists. […] This is not discovery.").[9]  With respect to Category III in particular, the Government does not even know what employees would be on these email communications if they existed or what entities they work for.  With respect to Category I, this Court has already held with respect to Dr. Xiao's subpoena request that "[t]he period of time from January '17 through the present is not relevant" and "is overbroad."  3/8/22 Tr. at 18. Yet the Government incredibly requests an even broader time period.  *See* Issuance Motion at 1, 3 n.1 (making an undated request and claiming that it includes at least documents from October 2016 through present).[10]  The Government must be held to the same stringent *Nixon* standard applied to Dr. Xiao.  Because it cannot meet that standard, the Government's subpoena must be quashed.

---

[9] Respectfully, it is incorrect to state that "the defendant has already made statements that these records exist."  *Id*. at 37.  Dr. Xiao does not stipulate or agree that the records exist, and it is clear that the Government is attempting to use Rule 17 for discovery.

[10] The Government's Category I and Category III requests are both "any and all" requests reaching a broad class of "all records" or any qualifying "communications."  The Government's failure to

## IV.    __The Court Should Exercise Its Discretion to Quash the Subpoena__

Even if the Court disagrees with Dr. Xiao's legal analysis, Dr. Xiao respectfully submits that considerations of judicial economy merit exercising discretion to quash the subpoena.  If the Government is permitted to subpoena records that Dr. Xiao believes in good faith to be protected by the Fifth Amendment, the only way for Dr. Xiao to obtain appellate review would be to refuse to comply, be found in contempt, and appeal the contempt order.  *See Maness v. Meyers*, 419 U.S. 449, 460 (1975) (holding that appeal requires going into contempt); *United States v. Ryan*, 402 U.S. 530, 532 (1971) ("[O]ne to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey."); *In re Grand Jury Subpoena*, 709 F.3d 1027 (10th Cir. 2013) (holding that no appeal could be had unless the witness is held in contempt).  Dr. Xiao would be left with a Hobson's Choice of either sacrificing his constitutional and appellate rights or inconveniencing the Court, wasting judicial resources and redirecting time and resources away from trial preparation in order to further litigate this issue.

## CONCLUSION

WHEREFORE, Dr. Xiao respectfully requests that the Government's subpoena be quashed in its entirety.

---

cabin its request to the specific evidence it wishes to offer is emblematic of a fishing expedition. *See United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("Subpoenas seeking 'any and all' materials," may "justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by Nixon."); *United States v. Booth*, 2011 WL 6139062, at *2 (D. Nev. Dec. 9, 2011) (observing that "[t]he best clue as to the intent to 'fish' is the repeated use of the words 'any,' 'all,' and 'any and all'"); *United States v. Shanahan*, 252 F.R.D. 536, 541 (E.D. Mo. 2008) ("As a general rule, requests for 'any and all documents' are emblematic of a discovery request or of a fishing expedition.").

Dated: April 8, 2022

Respectfully submitted,

/s/ Ryan Poscablo

Ryan P. Poscablo, *pro hac vice*
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
rposcablo@steptoe.com
212.506.3900

Patrick F. Linehan, *pro hac vice*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
plinehan@steptoe.com
202.429.3000

Michelle D. Nasser, *pro hac vice*
Dowd Bennett LLP
7733 Forsyth Blvd. Suite 1900
St. Louis, MO 63105
mnasser@dowdbennett.com
314.889.7345

*Attorneys for Defendant Mingqing Xiao*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2022 I electronically filed Defendant's Motion to Quash Rule 17(C) Subpoena with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, including:

Peter T. Reed
Assistant U.S. Attorney
9 Executive Drive
Fairview Heights, Illinois 62208

Scott A. Verseman
Assistant U.S. Attorney
9 Executive Drive
Fairview Heights, Illinois 62208

Shawn Derek Shugert
Trial Attorney, National Security Division
950 Pennsylvania Ave NW, Suite 7700d
Washington, DC 20530

/s/ Ryan P. Poscablo
Ryan P. Poscablo, *pro hac vice*
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
rposcablo@steptoe.com
212.506.3900