**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 21-CR-40039-SMY |
| | ) | |
| MINGQING XIAO | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT MINGQING XIAO'S MOTION IN LIMINE TO EXCLUDE THE
PROPOSED TESTIMONY OF REBECCA KEISER AND MICHAEL WELCH**

Comes now Defendant Mingqing Xiao ("Dr. Xiao" or "Defendant"), by his attorneys,

who provide this Court with this motion *in limine* to exclude the testimony of Dr. Rebecca

Keiser of the National Science Foundation ("NSF") and Internal Revenue Service ("IRS")

Revenue Agent Michael Welch.[1]

For both of these potential witnesses, the government has proffered testimony that is

wholly irrelevant to the elements of the charged offenses (regardless of whether it is expert or lay

testimony).  In both cases, the government would present technical testimony regarding the

policies, missions, and backgrounds of federal agencies that has no bearing on the proper focus

of this trial—the conduct and intent of Dr. Xiao.  Not only would these distractions fail to assist

the jury understand the issues, as required for proper expert testimony under Federal Rule of

Evidence 702 and *Daubert*, the proffered testimony would also confuse and complicate the

---

[1] The government submitted a notice of expert testimony under Federal Rule of Criminal Procedure 16(a)(1)(G) concerning both potential witnesses, stating that the government did not believe either would actually provide opinion testimony under Rule 702, but that it submitted the notice "out of an abundance of caution and as a courtesy to the court and the parties."  Gov't Not. of Expert Testimony ("Gov't Not.") at 1, 5, ECF No. 114.

issues and mislead the jury regarding its purview.  Thus, regardless of whether Dr. Keiser or Agent Welch provides expert or lay testimony, that testimony also should be precluded under Rule 403.

*First*, as set forth below, the government's proffered testimony from Dr. Keiser is not relevant to the counts charged, and instead seeks to redirect the jury to irrelevant concepts like research security and the NSF's mission.  Moreover, Dr. Keiser is not qualified to provide the expert testimony in question, and she has no relevant personal knowledge that would allow her to testify as a fact witness.  The proffered testimony also fails to clear the hurdle of Rule 403 because its non-existent probative value is outweighed by the risk of undue prejudice, confusing the issues, and misleading the jury.

*Second*, the testimony of Agent Welch should be excluded for similar reasons.  Critically, Agent Welch's proposed testimony fails the test of Rule 702 because it would not aid the jury's understanding of the issues.  This case does not involve complicated transactions or tax structures, and background on the federal tax code and IRS policy is entirely irrelevant to the false tax returns and FBAR counts.  Furthermore, the specific categories of testimony that the government proffered for Agent Welch are not permitted under the Rules of Evidence.  Specifically, Agent Welch's testimony should be limited to preclude him from describing the reasons "why" IRS and FinCEN have implemented certain rules and interpreting those rules, and from summarizing the testimony of other witnesses.

For these reasons, Dr. Xiao respectfully moves to exclude the testimony of Dr. Keiser and Agent Welch.

## ARGUMENT

## I.    THE COURT PLAYS AN ESSENTIAL GATEKEEPER FUNCTION

Trial courts play an essential gatekeeper function in ensuring that witness testimony is relevant and that it does not pose a substantial risk of undue prejudice or confusing the jury. That gatekeeper function is particularly important when evaluating potential expert testimony because such testimony "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (citations omitted).

### A.    Testimony By A Qualified Expert Witnesses Must Be Relevant

Federal Rule of Evidence 702 governs testimony by expert witnesses.[2]  In *Daubert*, the Supreme Court interpreted Rule 702 to require "the district court to act as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (citing *Daubert*, 509 U.S. at 589).  As noted above, this concern is rooted in the fact that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.  This risk is particularly pronounced when the expert testimony addresses "the

---

[2] Rule 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

ultimate issue of fact." *See United States v. Navarro*, 90 F.3d 1245, 1260 n.14 (7th Cir. 1996)

(quoting *United States v. Boyd*, 55 F.3d 667, 672 (D.C. Cir. 1995)).

Simply put, in performing its gatekeeper role under Rule 702 and *Daubert*, the district

court must evaluate: "(1) the proffered expert's qualifications; (2) the reliability of the expert's

methodology; and (3) the relevance of the expert's testimony." *Gopalratnam v. Hewlett-*

*Packard Co.*, 877 F.3d 771, 778-79 (7th Cir. 2017).

### B. *All* Evidence Must Be Relevant and Not Unduly Prejudicial, Misleading, or Confusing to the Jury

Of course, to be admitted, *all* evidence must be relevant, including expert testimony.

Evidence is relevant when it has "any tendency to make a fact more or less probable than it

would be without the evidence," where "the fact is of consequence in determining the action."

Fed. R. Evid. 401.  Under Rule 402, only relevant evidence is admissible.  Fed R. Evid. 402.

Relevant evidence may also be excluded "if its probative value is substantially outweighed by a

danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

time, or needlessly presenting cumulative evidence."  Fed R. Evid. 403.

## II.   DR. KEISER'S PROFFERED TESTIMONY SHOULD BE EXCLUDED

Through Dr. Keiser's testimony, the government seeks to inappropriately distort this case

and shift the focus from Dr. Xiao's actual conduct to nebulous concepts like research security

and descriptions of NSF's mission.  Gov't Not. at 1-2.  Dr. Xiao respectfully requests that the

Court exercise its gatekeeper function to preclude that effort.  Specifically, Dr. Keiser's

testimony should be excluded for the reasons set forth below.  *First*, her testimony as an expert

should be excluded under Rule 702 and *Daubert* because it is not relevant to assisting the jury in

understanding any fact at issue and because she is not qualified to testify on the specific topics

noticed by the government.  *Second*, Dr. Keiser's testimony as a fact witness must be limited to

matters as to which she has personal knowledge, and she does not have personal knowledge of the issues that are relevant to this case. *Third*, regardless of whether it is expert or lay testimony, Dr. Keiser's testimony should be excluded because it would have little or no probative value, but would unfairly prejudice Dr. Xiao and confuse the jury.

### A. The Proffered Testimony of Dr. Keiser Does Not Satisfy Rule 702 and *Daubert*

#### 1. The Proffered Testimony Is Not Relevant And Would Not Help The Jury Understand Any Relevant Issue

Rule 702's "relevance" provision requires that an expert witness's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (noting that this provision "goes primarily to relevance"). Dr. Keiser's testimony would not meet this relevance requirement and therefore should be excluded.

As set forth above, the government's notice proffers that Dr. Keiser will testify regarding (1) "the impact of non-disclosures on the [NSF], on other researchers applying for grants, and on the federal grant research community as a whole," (2) "the purpose and nature of principled international scientific research collaboration, and corresponding threats to NSF research security," and (3) "the purpose, nature, and history of NSF's disclosure requirements and the ways NSF uses the information during the grant award process." Gov't Not. at 2. None of these topics, which relate primarily to the NSF's history, mission, and activities, will have any bearing on the elements of any of the offenses with which Dr. Xiao has been charged. As to those charges relating to the NSF:

- To prove wire fraud (18 U.S.C. § 1343), defined as "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," *id.*, the government must show that the defendant "(1) participated in a scheme to defraud,

(2) intended to defraud, and (3) used interstate wires in furtherance of the fraud." *United States v. Buncich*, 926 F.3d 361, 366 (7th Cir. 2019).

- To prove a false statement charge (18 U.S.C. § 1001(a)(1)), the government must show that the defendant "(1) ma[de] a statement that (2) was false, (3) was material, (4) was made knowingly and willfully, and (5) was made in a matter within the jurisdiction of any department or agency of the United States." *United States v. Ranum*, 96 F.3d 1020, 1028 (7th Cir. 1996) (internal quotation marks omitted).[3]

None of these elements—all of which stem from Dr. Xiao's alleged failure to disclose certain information to NSF—has anything to do with the history of the NSF or the reasons for its policies, the topics on which Dr. Keiser's expert testimony has been proffered  Nor would testimony regarding "the impact of non-disclosures on the [NSF], on other researchers applying for grants, and on the federal grant research community as a whole" be relevant to any element of any of the charges.[4]  Accordingly, her testimony is wholly irrelevant and would only serve to confuse the jury by distracting from the actual elements of the charged offenses.  Dr. Keiser's expert testimony should be excluded on this basis in its entirety.

       2.     *Dr. Keiser Is Not Qualified To Testify Regarding The Specific Topics Noticed By The Government*

---

[3] Under the false statement statute's materiality prong, "a concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988); *United States v. Clark*, 787 F.3d 451, 460 (7th Cir. 2015).  Even if Dr. Keiser's proffered testimony concerning "the ways NSF uses the information during the grant award process" could bear on this analysis in a very limited way, as explained below, Dr. Keiser is not qualified to testify as to materiality as an expert witness.

[4] To the extent that the government seeks to elicit such testimony from Dr. Keiser in order to establish that NSF was a "victim" of the alleged wire fraud, such evidence would be at odds with § 1341's requirement that the alleged scheme to defraud be one to "obtain money or property," and not the deprivation of some intangible right.  *See Cleveland v. United States*, 531 U.S. 12, 27 (2000) ("We conclude that § 1341 requires the object of the fraud to be 'property' in the victim's hands . . . . Absent clear statement by Congress, we will not read the mail fraud statute to place under federal superintendence a vast array of conduct traditionally policed by the States.").  Indeed, permitting the government to elicit such testimony runs the risk of converting, at least in the eyes of the jury, a wire fraud charge with a $5,000 loss into some sort of "honest services" fraud charge that is wholly absent from the Superseding Indictment.

Although Dr. Keiser is undoubtedly well-qualified in the general sense, she should be precluded from testifying as an expert here because she lacks the "knowledge, skill, experience, training, or education" qualifying her to testify as an expert witness on the *actual topics noticed by the government*.  Fed. R. Evid. 702.

Dr. Keiser is being offered to testify about the impact of non-disclosures on the NSF, on other researchers applying for grants, and on the federal grant research community as a whole, "the purpose and nature of principled international scientific research collaboration, and corresponding threats to NSF research security," and "the purpose, nature, and history of NSF's disclosure requirements and the ways NSF uses the information during the grant award process." Gov't Not. at 2.  To be clear, Dr. Keiser is an accomplished and impressive person. According to her CV, however, she has no relevant education or other training on these specifically proffered issues, having focused on international political economy and comparative politics while working on her Ph.D. in international studies, on the "politics of money" and "international business" when working on her master's degree, and on Japanese studies as an undergraduate. ECF No. 114-1 at 5.

She also lacks sufficient knowledge, skill, or experience to testify as an expert on the topics for which she is being offered.  According to her CV, she began her current role as Chief of Research Security Strategy and Policy in March 2020, and none of her previous roles at NASA or elsewhere related to disclosures required as part of NSF grant applications.  *Id.* at 1-5. Two years of experience, without any experience in the design or development of NSF grant proposal disclosure policies, is insufficient to confer on her the type of "scientific, technical, or other specialized knowledge" contemplated by Rule 702.  *See Whiting v. Bos. Edison Co.*, 891 F. Supp. 12, 25 (D. Mass. 1995) (doctor with two years' experience as a health physics technician

was not qualified to give expert testimony on the subjects of health physics and radiation epidemiology).

Most importantly, Dr. Keiser has evidently *never* reviewed, rejected, or awarded any application for grant money from NSF, and she did not make the decision in this particular case. Her expertise is simply not relevant to the charges in this case or even the expected testimony proffered by the government.  To be clear, the government has acknowledged that this case has nothing to do with espionage, theft of trade secrets, or other security issues.[5]  Instead, the government has made clear that it views this prosecution as a simple "grant fraud" case, and Dr. Keiser is the wrong expert for such a case.

### B. Dr. Keiser's Testimony Is Inadmissible As Fact Testimony Or Lay Opinion Testimony

The government concedes in its Notice that it "does not believe that Ms. Keiser's testimony is in fact opinion testimony under Rule 702."  Gov't Not. at 1.  Even if Dr. Keiser is a fact witness, however, her proffered lay testimony is still inadmissible.

If Dr. Keiser testifies as a fact witness, her testimony (including, but not limited to, any lay opinions) must be limited to matters as to which she has personal knowledge.  *See* Fed R. Evid. 602; *see also* Fed. R. Evid. 701 (requiring that lay opinion testimony be "rationally based on the witness's perception").  As discussed above, Dr. Keiser does not have personal knowledge of the topics identified in the government's Notice,  all of which predate her tenure at the NSF, in some respects by several decades.  She has evidently never made a decision on any application

---

[5] Indeed, the government agrees that "evidence and argument (a) about this case being part of DOJ's China Initiative, and (b) about offenses that have not been charged like espionage, spying, or theft of trade secrets, should be excluded."  ECF No. 64 at 1; *see also* ECF No. 113 at 1. The Court agreed with this view at the pretrial conference on April 14, 2022, and granted Dr. Xiao's motion to exclude such evidence at trial.  *See* Order at 3-4 (Apr. 18, 2022), ECF No. 136.

for grant money from NSF, and it is unclear, at best, whether she has personal knowledge of the purpose and nature of NSF's disclosure requirements, of "the ways NSF uses the information during the grant award process," or of "the impact of non-disclosures on the [NSF], on other researchers applying for grants, and on the federal grant research community as a whole."

Accordingly, Dr. Keiser should not be permitted to testify ***at all*** about these topics.  In particular, Dr. Keiser should not be permitted to speak to the materiality of the disclosures that Dr. Xiao allegedly should have made.  Indeed, the Justice Department's own guidance states that "[m]ateriality is best shown by the testimony of a witness, *generally those who make the decisions on the application or statements in the particular case*, concerning the influence that defendant's allegedly false statement might have had on the ultimate result of the transaction." *Justice Manual: Criminal Resource Manual* § 911, Materiality (updated Jan. 21, 2020) (emphasis added).[6]  In fact, the government is expected to call a NSF Program Officer who was actually involved in Dr. Xiao's grant application.  Introducing further testimony from Dr. Keiser regarding NSF's policies will only unnecessarily expand the case and confuse the jury.  Because Dr. Keiser was not evidently involved in handling Dr. Xiao's grant application, any testimony that Dr. Keiser could provide on the topic of materiality would be expert opinion testimony— testimony that, as noted *supra*, she is not qualified to provide.

Moreover, allowing Dr. Keiser to provide detailed, technical testimony regarding NSF's policies and operations outside of her own experience runs the risk of evading the reliability requirements of Rule 702 by using Rule 701 as a backdoor.  Subparagraph (c) of Rule 701 was

---

[6] *See also, e.g.*, *United States v. Wilson*, 879 F.3d 795, 807 (7th Cir. 2018) (relying on testimony of investigating agents in affirming materiality of false statements in a § 1001 prosecution based on false statements made to those agents); *United States v. Gant*, 119 F.3d 536, 539 (7th Cir. 1997) (relying on testimony of grand jury foreperson in affirming materiality of false statements in 18 U.S.C. § 1623 prosecution for making a false statement to a grand jury).

added in 2000 with the express goal of "eliminat[ing] the risk that the reliability requirements set

forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay

witness clothing."  Fed. R. Evid. 701 Advisory Committee's note to 2000 Amendments; *see also*

*United States v. Tomkins*, No. 07-cr-0227, 2012 WL 1357701, at \*10 (N.D. Ill. Apr. 19, 2012).

Courts have recognized that describing technical jargon or unfamiliar concepts "carries with it

the imprimatur of expert testimony."  *Id.* (citing *United States v. Farmer*, 543 F.3d 363, 369 (7th

Cir. 2008)).  Thus, the government should not be permitted to sidestep Rule 702 by proffering

Dr. Keiser's technical testimony as lay opinion.  Fed. R. Evid. 701(c) ("If a witness is not

testifying as an expert, testimony in the form of an opinion is limited to one that is: . . . (c) not

based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

### C.    In The Alternative, The Proffered Testimony Should Be Precluded Because It Is Unduly Prejudicial And Risks Confusing Or Misleading The Jury

Even if Dr. Keiser's testimony had any relevance as either expert or lay testimony (which

it does not), the Court still should exclude it because of the unfair prejudice it would cause Dr.

Xiao and the risk of confusing the issues and misleading the jury.  Relevant evidence may be

excluded where "its probative value is substantially outweighed by a danger of unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."  Fed. R. Evid. 403.  Evidence that "bear[s] minimal probative value is

admissible only if it bears a remote risk of prejudice."  *United States v. Boros*, 668 F.3d 901, 910

(7th Cir. 2012).  The Court's application of Rule 403 must be especially discerning in the context

of expert testimony.  *See Daubert*, 509 U.S. at 594.

Testimony that describes the downstream consequences of a defendant's actions without

providing significant insight into whether the elements of the offenses charged have been met is

frequently excluded under Rule 403 on the ground that it will serve only to inflame the jury's

10

passions by refocusing attention from the elements at issue to the possible consequences of the actions attributed to the defendant. *See Boros*, 668 F.3d at 909-10 (in prosecution for conspiracies to import and to possess with intent to distribute controlled substances, and to launder money, "testimony about the drugs' side effects and birth defects had a meaningful potential for unfair prejudice" and should have been excluded); *United States v. Cooper*, 591 F.3d 582, 589 (7th Cir. 2010) (in prosecution for conspiracy to distribute and possess with intent to distribute heroin, evidence showing that defendant's customers died after buying heroin from him should have been excluded under Rule 403 because the evidence "had nothing to do with the charges" and was unduly prejudicial). Allowing Dr. Keiser to testify about the proffered matters, which relate to the NSF's mission and to the consequences to the NSF of inadequate disclosures in grant applications, would unfairly prejudice Dr. Xiao by shifting the focus from his conduct to broader (and irrelevant) concerns about government policy. This shift also risks confusing the issues by distracting from the elements of the charged offenses and misleading the jurors about the proper matters for their consideration. Thus, even if the proffered testimony had some relevance (and it does not), Dr. Keiser's testimony should be precluded whether she is an expert or lay witness. *See* Fed. R. Evid. 403.

## III.   AGENT MICHAEL WELCH'S PROFFERED TESTIMONY SHOULD BE EXCLUDED

Dr. Xiao also respectfully requests that the Court exercise its gatekeeper function to exclude the testimony of Agent Welch. *First*, his testimony should be excluded in its entirety because it is not relevant and would not be useful to the jury understanding the issues. *Second*, the specific categories of testimony that the government proffered for Agent Welch are not permitted under the Rules of Evidence and should be excluded on that basis as well.

### A.       Agent Welch's Proffered Expert Testimony Does Not Satisfy Rule 702 and *Daubert*

In this case, Agent Welch's proposed testimony is neither relevant nor helpful to the jury

to determining the facts at issue, and should be excluded in its entirety.

The government's Notice proffers that Agent Welch will testify regarding the following

topics:

> Agent Welch will be presented as a summary witness and to explain basic principles relating to FBARs and the reporting of foreign bank accounts on federal tax returns. Agent Welch will testify about what an FBAR is and why the requirements exists, that the Internal Revenue Service asks about foreign bank accounts and why it asks for this information. Agent Welch will also provide a summary and an analysis of the defendant's financial and taxation records introduced into evidence. This includes, but is not limited to, evidence of the defendant's foreign bank records, delinquent FBAR filings, and tax returns from the relevant time period. The scope of Agent Welch's testimony will include the tax code requirements for reporting foreign bank accounts to the IRS and the Department of the Treasury, a review of relevant financial and taxations records, and other trial evidence, including witness testimony. Agent Welch will also testify generally about the IRS tax code as it relates to foreign bank accounts and false tax returns.

Gov't Not. at 5-6.

The elements of the tax and FBAR counts are far narrower than the proffered testimony

from Agent Welch:

- To prove fraud or false statement on a tax return (26 U.S.C. § 7206(1)), the government must show that the defendant "[w]illfully ma[de] and subscribe[d] any [tax] return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." *Id.*

- To prove failure to file report of foreign bank account (31 U.S.C. §§ 5313, 5322), the government must show that the defendant willfully failed to file FinCEN Form 114, Report of Foreign Bank and Financial Accounts ("FBAR"), disclosing that he had an interest in and signature authority over a financial account in a foreign country. *Id.*

To be sure, in appropriate cases, courts in this Circuit have permitted IRS agents, including specifically Agent Welch, to testify in cases involving "several complex and intricate issues on federal income taxation." *United States v. Vallone*, No. 04-cr-0372, 2008 WL 516715, at *4 (N.D. Ill. Feb. 21, 2008). In *Vallone*, for example, the government proffered Agent Welch to provide testimony on highly technical and complicated tax issues, including to "[i]dentify the amount of diverted income appearing on the various clients' Asset Management Companies' trust tax returns, establish the deductions on the returns that were allowed, remove from the diverted income any income that was previously reported on the clients' personal tax return, and then apply a multiplier of 28% to reach a conservative calculation of the tax loss amount." *Id.* The court explained that "*given the complexity of the issues involved here*, the Agents' expertise will certainly assist the trier of fact in understanding and in weighing the evidence and issues involved in this case." *Id.* (emphasis added). Similarly, in *United States v. Pree*, the Seventh Circuit upheld the admission of testimony from Agent Welch that involved complicated tax analysis, including the tax treatment of stock received as compensation, the impact of the stock's restricted status, and the proper accounting of the basis of the defendant's assets. 408 F.3d 855, 869 (7th Cir. 2005)

In contrast to *Vallone* and *Pree*, there are no complex or intricate tax or accounting issues related to the charges that Dr. Xiao willfully failed to disclose a foreign bank account to the IRS. In fact, the government has represented to the Court that this is "not a tax evasion case" in is motion to preclude "evidence of the actual tax amount owed" by Dr. Xiao. ECF No. 107 at 3. And as the Court noted during the pretrial conference when it granted the government's motion to exclude evidence of a tax deficiency, the tax charges focus on Dr. Xiao's response to a specific question on a tax return. *See* Order at 3-4 (Apr. 18, 2022), ECF No. 136 (granting the

motion *in limine*).  Similarly, the FBAR charge does not require understanding of any complex or complicated tax issues—the government must prove that Dr. Xiao was required to file an FBAR and *willfully* failed to do so.  31 U.S.C. §§ 5313, 5322.

There is no connection between those relevant issues and Agent Welch's proffered testimony, which includes "what an FBAR is and why the requirements exists, that the Internal Revenue Service asks about foreign bank accounts and why it asks for this information," and "general[]" testimony "about the IRS tax code as it relates to foreign bank accounts and false tax returns."  Gov't Not. at 5-6.  The government moved to exclude evidence of any tax deficiency (Dr. Xiao did not oppose that request), and it would be just as unhelpful (and confusing) to the jury for the government now to introduce wide-ranging testimony about other miscellaneous tax topics that are not relevant to the elements of the charged offenses and could only serve to inflame the jury.  Thus, Agent Welch's unhelpful and irrelevant testimony should be excluded in its entirety under Rule 702 and *Daubert*.

> **B.**    **Each Category of Proffered Evidence Should Be Precluded**

Even if the Court does not preclude Agent Welch's testimony in its entirety under Rule 702 and *Daubert* as unhelpful to the jury, each category of testimony proffered for Agent Welch should also be excluded on other grounds.

> *1.*    *Agent Welch Should Be Precluded From Testifying As To Why IRS and FinCEN Rules Exist And Interpreting Those Requirements*

The government has proffered that Agent Welch will testify as to "what an FBAR is and *why the requirements exists*," and "that the Internal Revenue Service asks about foreign bank accounts and *why it asks for this information.*"  Gov't Not. at 5 (emphases added).  Testimony regarding the reasons for IRS and FinCEN rules is entirely irrelevant to the elements of the charges and would create a serious risk of confusing the issues and misleading the jury.  As

noted *supra*, courts have consistently excluded testimony under Rule 403 that simply describes the downstream consequences of a defendant's actions and the importance of certain laws in preventing those consequences without evidencing whether the elements of the offenses charged have been met. *See Boros*, 668 F.3d at 909-10; *Cooper*, 591 F.3d at 589. Those cases recognize that this testimony can serve only to inflame the jury's passions by refocusing attention from the elements at issue to the possible consequences of the actions attributed to the defendant.

Analogies to a typical prosecution make clear the irrelevance of the proposed testimony from Agent Welch regarding "why" certain rules exist. *Cf. Boros*, 668 F.3d at 909-10; *Cooper*, 591 F.3d at 589. In a run-of-the-mill gun possession case, for instance, the government cannot describe violent crime statistics or explain why gun violence required special legislation. Nor would it be appropriate in a narcotics prosecution for a DEA agent to delve into the social costs of drug abuse or the number of lives destroyed by drug trafficking. This case is no different. The jury's role is *not* to evaluate an agency's purpose in implementing its rules and regulations. Testimony on those issues runs the risk of distracting from the relevant facts that *are* part of the jury's mandate—determining whether the government proved each element of the counts beyond a reasonable doubt.[7]

---

[7] Moreover, it is axiomatic that "'[i]t is not for witnesses to instruct the jury as to applicable principles of law, but the judge.'" *Bogathy v. Union Pac. R.R.*, No. 17-cv-4290, 2020 WL 419406, at *6 (N.D. Ill. Jan. 24, 2020) (quoting *Panter v. Marshall Field & Co.*, 646 F.2d 271, 294 (7th Cir. 1981)). The Court determines the applicable law, which "is not a question of fact, to be resolved by the jury after a battle of experts." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994). Here, there is a significant risk that testimony from an IRS agent about the governing law "would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently." *CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v. Venrock Assocs.*, 411 B.R. 571, 586–87 (N.D. Ill. 2009) (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988)). Given Agent Welch's position with the IRS, the jury is likely to view his testimony about tax law with an "aura of trustworthiness and reliability," which further increases the risk that his interpretation of the law "could override the judge's instructions to the jury, and multiple

For these reasons, the Court should prohibit testimony related to why FBAR requirements exist or why the IRS asks for information regarding foreign bank accounts..

> 2.   *Agent Welch Should Be Precluded From Summarizing The Testimony Of Other Witnesses*

The government's notice of expert testimony states that "[t]he scope of Agent Welch's testimony will include the tax code requirements for reporting foreign bank accounts to the IRS and the Department of the Treasury, *a review of* relevant financial and taxation records, and *other trial evidence, including witness testimony*."  Gov't Not. at 6 (emphasis added).  Permitting Agent Welch to summarize the testimony of other witnesses raises obvious hearsay and Confrontation Clause problems.  *See generally* Fed. R. Evid. 802; U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.").  The jury must evaluate the credibility of each witness's own testimony, and it would be entirely inappropriate for a government agent to restate, reframe, or filter that testimony for the government's benefit.  *See United States v. Thomas*, 453 F.3d 838, 846 (7th Cir. 2006) ("Because the evaluation of witness credibility is the province of the jury, [] 'it is improper to ask one witness to comment on the veracity of the testimony of another witness.'" (quoting *United States v. McKee*, 389 F.3d 697, 699 (7th Cir. 2004)).

As one court in the Northern District of Illinois succinctly put it, "'assisting the jury' cannot veer into 'doing the jury's job for it,' and evidence that invades a key function of the jury is not admissible." *Bogathy*, 2020 WL 419406, at *5.  Judging witness credibility is one of the core functions of the jury, and Seventh Circuit has repeatedly affirmed exclusion of expert opinions that invade that role.  *See, e.g., United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir.

---

presentations of the law can create a significant potential for jury confusion. *Id.* (citing *Specht*, 853 F.2d 809).

2007); *Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000); *see also Bogathy*, 2020 WL 419406, at *5; *Davis v. Duran*, 277 F.R.D. 362, 370 (N.D. Ill. 2011).  For these reasons, Agent Welch should be precluded from summarizing the testimony of other witnesses.

## **CONCLUSION**

For the foregoing reasons, Dr. Xiao respectfully requests that the Court exclude the testimony of Dr. Rebecca Keiser and Agent Michael Welch.

Dated: April 19, 2022

Respectfully submitted,

/s/ Ryan P. Poscablo
Ryan P. Poscablo, *pro hac vice*
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
rposcablo@steptoe.com
212.506.3900

Patrick F. Linehan, *pro hac vice*
James M. Hobbs, *pro hac vice*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
plinehan@steptoe.com
jhobbs@steptoe.com
202.429.3000

Michelle D. Nasser, *pro hac vice*
Dowd Bennett LLP
7733 Forsyth Blvd. Suite 1900
St. Louis, MO 63105
mnasser@dowdbennett.com
314.889.7345

*Attorneys for Defendant Mingqing Xiao*

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2022, I electronically filed Defendant's Motion *In Limine* to Exclude the Proposed Testimony of Rebecca Keiser and Michael Welch with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record, including:

Peter T. Reed
Assistant United States Attorney
9 Executive Drive
Suite 300
Fairview Heights, IL 62208

Scott A. Verseman
Assistant United States Attorney
9 Executive Drive
Suite 300
Fairview Heights, IL 62208

Shawn Derek Shugert
Trial Attorney, National Security Division
950 Pennsylvania Ave., NW
Suite 7700d
Washington, DC 20530

/s/ Ryan P. Poscablo
Ryan P. Poscablo, *pro hac vice*
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
rposcablo@steptoe.com
212.506.3900