IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cr-40039-SMY |
| | ) | |
| MINGQING XIAO, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

U.S. taxpayers are required to report their foreign bank accounts. Defendant Mingqing Xiao, however, told the Internal Revenue Service (IRS) that he had no foreign bank accounts in tax years 2017, 2018, and 2019—an answer he knew to be false. The United States asks the Court to impose a guideline-range sentence of 12 months' imprisonment for these offenses.

**I.    THE OFFENSES**

Defendant Mingqing Xiao received substantial amounts of money from universities and other entities in China for his research and other work there. For example, evidence at trial showed that he was paid about $24,000 a year by Shenzhen University, starting in 2016, pursuant to Dr. Xiao's employment contract at that university. *See* GX12-13, 43-44; Presentence Investigation Report (PSR) at ¶ 15. He also received about $30,000 for work done with collaborators at Guangdong University of Technology starting in 2017. *See* GX12; 20-25. Dr. Xiao had all this money deposited into his foreign bank account at Ping An Bank in China. *See* GX12, 20-25, 57-60, 81-82; PSR at ¶ 15. By the time he was interviewed in 2020, he had accumulated over $120,000.00. *See* GX13.

1

He did not disclose the existence of the payments or the account to anyone, including the Internal Revenue Service (IRS), until he was confronted by law enforcement in December 2020. IRS Form 1040 expressly asks a simple and straightforward question: "At any time during [the calendar year], did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country?" GX93-95.  In order to hide his activities and earnings in China, Dr. Xiao answered "no" to this question on his tax returns in 2017, 2018, and 2019.  *Id.*  Evidence at trial showed that Dr. Xiao's false statements were willful, so the jury returned a guilty verdict on counts 4, 5, and 6.  U.S. citizens holding foreign bank accounts are also required to file a foreign bank account report (FBAR) with FinCen for any calendar year in which the balance of a foreign bank account exceeds $10,000.  Evidence showed Dr. Xiao was well aware of this threshold reporting requirement, but willfully chose not to file such a report for calendar year 2019.  Thus, the jury found Dr. Xiao guilty on count 7 as well.

## II.     ADVISORY GUIDELINE RANGE

Dr. Xiao's offenses result in a guideline range of 10-16 months' imprisonment.  PSR at ¶¶ 21-39.  The parties did not file any objections to the PSR's calculation of the guideline range offense level.  *See* Docs. 199, 200.  Dr. Xiao was convicted of three counts of making a false statement on a tax return, 26 U.S.C. § 7206(1), and one count of failure to file a report of a foreign bank account, 31 U.S.C. §§ 5314, 5322.  The guideline range for these statutes is calculated under U.S.S.G. §§ 2S1.3 or 2T1.1, whichever is greater.  *See* U.S.S.G. appendix A & § 2S1.3(c).  Dr. Xiao has acknowledged that his false statements resulted in an intended IRS tax loss exceeding $15,000, PSR ¶¶ 13-17 (estimating the intended loss as $27,984.00), which produces an offense level of 12.  *See* U.S.S.G. § 2T4.1.  Dr. Xiao does not have any criminal history.  PSR at ¶¶ 33-39.

This results in a guideline range of 10-16 months' imprisonment, up to three years' supervised release, a fine of $5,500 to $55,000, and a special assessment of $400.  PSR ¶¶ 58-68.

The guidelines are the "starting point and the initial benchmark" for determining a federal sentence.  *Gall v. United States,* 552 U.S. 38, 49 (2007).  The Seventh Circuit explained the process this way:

> A sentencing court must first correctly calculate the advisory Guidelines range.  *United States v. Rodriguez,* 425 F.3d 1041, 1046 (7th Cir. 2005).  Next, the defendant must be given the opportunity to bring to the court's attention any factors under § 3553(a) that might warrant a sentence below the Guidelines range.  *United States v. Dean,* 414 F.3d 725, 730 (7th Cir. 2005).  The court must consider those factors in selecting an appropriate sentence, although it need not expressly address all of them.  *United States v. Williams,* 425 F.3d 478, 480 (7th Cir. 2005).

*United States v. Jones*, 696 F.3d 695, 700 (7th Cir. 2012).

Sentences are reviewed for reasonableness.  *United States v. Booker*, 543 U.S. 220, 260-262 (2005).  "A sentence is *reasonable* if the district court properly calculated the guidelines range and then exercised appropriate discretion in applying the factors specified in 18 U.S.C. § 3553(a)." *United States v. Vaughn*, 614 F.3d 412, 414 (7th Cir. 2010) (emphasis added).  "Even though the Sentencing Guidelines are advisory, judges are not allowed to simply ignore the guidelines ranges."  *United States v. Omole*, 523 F.3d 691, 699-700 (7th Cir. 2008), *abrogated on other grounds by United States v. Statham*, 581 F.3d 548 (7th Cir. 2009).  "Although the advisory range 'informs rather than cabins' the court's discretion, the court must nevertheless take the Guidelines into account."  *United States v. Snyder*, 635 F.3d 956, 959 (7th Cir. 2011) (*quoting United States v. Neal,* 512 F.3d 427, 438 (7th Cir. 2008)).

"The guidelines range is the Sentencing Commission's estimate of the reasonable range of punishments for the defendant's offense."  *United States v. Castillo,* 695 F.3d 672, 673 (7th Cir.

2012). Thus, "'a major departure should be supported by a more significant justification than a minor one.'" *United States v. Brown,* 610 F.3d 395, 398 (7th Cir. 2010) (*quoting Gall,* 552 U.S. at 128).

### III.   DISCUSSION OF THE § 3553(a) FACTORS

#### A.   Nature and Circumstances of the Offense

Foreign bank accounts are often associated with criminal conduct, as they are here. "[T]housands of U.S. tax dodgers conceal billions of dollars in assets within secrecy-shrouded foreign banks, dodging taxes and penalizing those of us who pay the taxes we owe." *See* Statement of Sen. Levin, 111 Cong. Rec. S1635-36 (March 17, 2010), attached as Exhibit 1. In 2010, the U.S. Senate "estimated that these tax-dodging schemes cost the Federal Treasury $100 billion a year" in unreported tax income. *Id.*

Form 1040 and the corresponding FBAR reporting requirement help identify "persons who may be using foreign financial accounts to circumvent United States law," whether to identify funds used for "illicit purposes" or "to identify income maintained or generated abroad." *See* IRS FBAR Reference Guide, at 2.[1] "Foreign financial institutions may not be subject to the same reporting requirements as domestic financial institutions," *id.* at 2, so the government must rely on taxpayers to self-report foreign accounts. As the revenue agent explained at trial:

> [A] foreign bank account is unlike an American bank account. The foreign bank account, the IRS isn't able to go ask for records with a summons or subpoena. And the foreign bank account doesn't have to give you your 1099 interest income statement or your 1099 dividend statement or your 1099 B stock sale or mutual fund sale statement. So we would

---

[1] Available at https://www.irs.gov/pub/irs-utl/irsfbarreferenceguide.pdf.

>want to know about the existence of the foreign bank account because it could have income that needs to be reported.

Trial Tr., Doc. 177 at 149 (Testimony of Michael Welch). That is why the IRS asks *every taxpayer* whether they have foreign bank accounts on Form 1040 and why the Bank Secrecy Act requires every taxpayer to report foreign accounts over $10,000.

Those safeguards were of no use here. Dr. Xiao simply lied to the IRS about his activities in China in order to benefit himself financially and professionally. As the Court heard, since at least 2016, Dr. Xiao has had multiple sources of income from various projects in China. He has admitted that it was income. And he knew of the reporting requirements. But he reported none of that income on his tax returns, and when asked straight up by the IRS whether he had foreign bank accounts, he answered "no." This is not simply a case of underreporting taxes owed, but of affirmative false statements.

As the jury found, Dr. Xiao repeated his criminal conduct year after year. He lied to the IRS in 2017 then signed and certified that his statements were true and accurate. He did the same thing in 2018. And did it again in 2019. Repetitive criminal behavior over a long period of time reflects greater criminal culpability. The circumstances of his offenses are relevant too: he lied to the IRS despite having *multiple* foreign bank accounts during the relevant time period, one of many facts showing Dr. Xiao's deception toward the IRS was part of a broader course of deceptive conduct designed to hide and conceal his activities in China.[2] All of this repeated, deceptive conduct shows the calculated and deliberate nature of his actions.

Dr. Xiao did not acknowledge or correct his illegal conduct until long after he was confronted about it. Defendant will say he filed his amended returns in August 2021, before the

---

[2] The Court can consider these facts either as relevant conduct, U.S.S.G. § 1B1.3, or as circumstances coloring the nature of the crime, 18 U.S.C. § 3553(a).

superseding indictment in October 2021. But that was nearly nine months after law enforcement confronted Dr. Xiao about his false statements in December 2020, and many years after he first began filing false tax returns. He took corrective action only when he had no other choice.

### B.   History and Characteristics of the Defendant

The Court also considers the history and characteristics of the defendant.

This was a crime of opportunity, not of need. Like many tax offenders, Dr. Xiao is wealthy. The PSR reports his assets to be well over $2,000,000. PSR at ¶ 55. As Dr. Xiao told agents, this was not money he needed right away. *See* GX13. He could safely leave it in an overseas account.

Dr. Xiao is older than most criminal defendants, but about average for this class of offenders. Tax offenders are often older, but they nonetheless receive substantial terms of incarceration notwithstanding their age. *See, e.g., United States v. Dibbi*, 413 Fed. App'x 618, 620 (4th Cir. 2011) (affirming sentence of 30 months for tax fraud and refusal to grant a downward variance based on the defendant's health and age). The average tax-fraud offender, according to the Sentencing Commission, is 52 years old. *See* United States Sentencing Commission, Quick Facts – Tax Fraud Offenses (2021).

Dr. Xiao is well-educated and holds multiple graduate degrees, reports a good upbringing, owns his own home, and has been steadily employed. PSR ¶¶ 43-53. He had every opportunity to succeed, but chose to cheat the system instead.

### C.   Seriousness of the Offense, Respect for the Law, and Just Punishment

"Tax crimes represent an especially damaging category of criminal offense," which "strike[] at the foundation of a functioning government.'" *United States v. Zukerman*, 897 F.3d 423, 428 (2d Cir. 2018) (citation omitted). The defendant benefited from the protections and privileges of the law and the services of his government, while cheating it and his fellow citizens.

*See United State v. Trupin*, 475 F.3d 71, 76 (2d Cir. 2007) (noting a tax evader "in effect stole from his fellow taxpayers through his deceptions"). "It is impermissible for a court to impose a lighter sentence on a white-collar defendant than on blue-collar defendants because it reasons that white-collar defendants suffer greater reputational harm or have more to lose by conviction." *United States v. Prosperi*, 686 F.3d 32, 47 (1st Cir. 2012).

### D.     Deterrence

There is an exceptional need to deter U.S. taxpayers who lie about foreign accounts and hide from U.S. tax liabilities. The overwhelming majority of U.S. taxpayers voluntarily self-report their income. *See* Testimony of the Internal Revenue Service on the Tax Gap, Senate Finance Committee, Subcommittee on Taxation and IRS Oversight (May 11, 2021), attached as Exhibit 2.[3] The "tax gap" is a term used to describe the difference between those amounts paid voluntarily and the amount of tax that would have been collected had all taxpayers fully complied. *Id*. So the tax gap "represents, in dollar terms, the annual amount of noncompliance with our tax laws." *Id*. The *total* tax gap is an estimated $441 billion. *Id.* at 1. In 2010, the U.S. Senate estimated that unreported overseas accounts "cost the Federal Treasury $100 billion a year." *See* Statement of Sen. Levin, 111 Cong. Rec. S1635-36 (March 17, 2010). Based on these numbers, tax fraud similar to Dr. Xiao's—hiding foreign accounts—makes up a substantial portion of all tax fraud in the United States.

General deterrence is a key "means of preventing like or related crimes" in all cases. *United States v. Molton*, 743 F.3d 479, 486 (7th Cir. 2014). But general deterrence plays a particularly important role in tax cases.

---

[3]Available at https://www.finance.senate.gov/imo/media/doc/2021%20ODonnell%20Johnson%20Tax%20Gap%20Written%20Testimony%20SFC%20051121.pdf.

One reason for this is that tax crimes are more difficult to detect, and thus are prosecuted less often. As the Sentencing Commission explained, in light of "the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration" underlying the tax guidelines. *See* U.S.S.G. at 2T1, intro. cmt.; *see also United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010) ("Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the [Sentencing] Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.").

A second reason deterrence is key? Tax crimes tend to be more lucrative. "Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it." *See United States v. Hefferman*, 43 F.3d 1144, 1149 (7th Cir. 1994). In other words, effective deterrence of financially profitable crimes requires punishment that makes the criminal conduct not worth it. Hiding income through the use of foreign bank accounts is a particularly lucrative white-collar offense, increasing the need for strong deterrence and a meaningful sentence.

In sum, white-collar criminals are "'prime candidates for general deterrence'" because they "'act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity.'" *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (citation omitted; emphasis added); *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) ("general deterrence is particularly important in the context of white collar crime").

## IV.     CONCLUSION

For the foregoing reasons, the United States respectfully requests a guideline range sentence of 12 months.

Respectfully submitted,

RACHELLE AUD CROWE
United States Attorney

/s/ *Peter T. Reed*
Peter. T. Reed
Scott A. Verseman
Assistant United States Attorneys
Nine Executive Drive
Fairview Heights, IL 62208
Peter.Reed@usdoj.gov
Scott.Verseman@usdoj.gov
(618) 628-3700
Fax: (618) 628-3720

S. Derek Shugert
Trial Attorney
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 305-1629
shawn.shugert@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 4:21-cr-40039-SMY |
| | ) |
| MINGQING XIAO, | ) |
| | ) |
| Defendant. | ) |

### Certificate of Service

I hereby certify that on September 13, 2022, I caused to be electronically filed the foregoing Government's Sentencing Memorandum to be filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Respectfully submitted,

RACHELLE AUD CROWE
United States Attorney

*s/ Peter T. Reed*

PETER T. REED
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
peter.reed@usdoj.gov
(618) 628-3700, Fax: (618) 628-3720